ESTATE OF SAMUEL I. LEVITT, DECEASED, HELEN S.
LEVITT, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 28680-88.     Filed September 13, 1990.

*Kenneth G. Coveney,* for the petitioner.
*William H. Quealy, Jr.,* for the respondent.

OPINION

NIMS, *Chief Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $143,327.

The issue for decision is whether section 403(e)(3) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 305 (ERTA), precludes petitioner from qualifying for an unlimited marital deduction under section 2056. (Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of the decedent's death and all Rule references are to the Tax Court Rules of Practice and Procedure.)

The parties submitted this case fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is the Estate of Samuel I. Levitt. Helen S. Levitt (Mrs. Levitt) is the widow of Samuel I. Levitt (decedent or Mr. Levitt). At the time of his death, decedent was domiciled in California. By order of the Superior Court

of California for the County of San Diego, dated February 16, 1989, Mrs. Levitt was appointed to act as administrator (executor) for the Estate of Samuel I. Levitt.

By trust agreement executed June 12, 1975, decedent, as trustor, made an inter vivos transfer of certain property to a revocable trust (the trust). In general, the trust was for the benefit of Mr. and Mrs. Levitt during their joint lifetimes and thereafter for Mrs. Levitt if she survived her husband, which she did.

By first amendment to trust agreement, executed March 6, 1978, decedent amended the trust in its entirety, but the dispository scheme was basically unchanged, although somewhat liberalized for the benefit of Mrs. Levitt after her husband's death.

On May 13, 1985, decedent, without having made any further amendments to the trust, died intestate.

The formula clause in question reads as follows:

B. If the Trustor's Spouse survives the Trustor, the Trustee shall divide the Trust Estate, without being required to make physical segregation thereof except to the extent necessary to make distribution, into shares as follows:

1. One share, to be known as Trust A, shall consist of the following:

(i) The one-half interest of the Spouse in the community property of our marriage to the extent included in the Trust Estate; and

(ii) The Marital Deduction Amount consisting of that amount of the balance of the Trust Estate which will equal the maximum marital deduction allowable for federal estate tax purposes on my death, reduced by the final federal estate tax values of all other property interests includible in my gross estate for federal tax purposes which pass or have passed to Spouse under other provisions of this Trust or otherwise and qualify for the marital deduction; provided that such amount shall be reduced by an amount, if any, needed to increase my taxable estate to the largest amount that will not result in a federal estate tax being imposed by reason of my death, after allowing for the unified credit which has not been claimed for transfers made by me during my life and all other available credits taken against the federal estate tax.

(For convenience, article II of the amended trust agreement containing the dispositive provisions is reproduced in its entirety in the appendix.)

On its estate tax return, petitioner reported a gross estate in the amount of $1,909,880, including assets of the trust in the amount of $858,851. Petitioner also claimed marital,

funeral expense, and debt expense deductions in the amounts of $1,424,214, $20,000, and $9,621, respectively.

The claimed marital deduction in the amount of $1,424,214 consists of the following items, as disclosed on Schedule M of the Federal estate tax return (Form 706) filed by Mrs. Levitt as executor:

| | |
|---|---:|
| Real estate reported in Schedule A net of $85,722 mortgage report in Schedule K | $438,278 |
| Stocks reported in Schedule B | 9,024 |
| Cash reported in Schedule C | 424,017 |
| Insurance on decedent's life reported in Schedule D | 56,080 |
| Jointly owned property reported in Schedule E | 27,408 |
| Other miscellaneous property reported in Schedule F | 10,500 |
| Surviving spouse's interest in revocable trust (Trust A) | 458,907 |
| Total | 1,424,214 |

Under the formula clause, Trust A, the surviving spouse's trust, shall consist of the surviving spouse's half of the trust's assets and the marital deduction amount. The marital deduction amount is equal to $458,851. ($858,851, the value of decedent's share of the trust's assets, reduced by $400,000, the amount needed to fully utilize the $121,800 of unified credit available to the estate, equals a marital deduction amount of $458,851.) Petitioner, however, claimed a marital deduction with respect to Trust A in the amount of $458,907, rather than $458,851. Consequently, an unexplained difference of $56 exists. The tax computation on the face of the return reflects no other available credits.

The assets of the trust are includable in the decedent's gross estate pursuant to section 2038, and these assets were properly listed on Schedule G of the estate tax return.

At the time of the creation of the trust on June 12, 1975, Mr. and Mrs. Levitt were residents and domiciliaries of the State of Florida. At the time of the execution of the amendment to the trust on March 6, 1978, Mr. and Mrs. Levitt were residents and domiciliaries of the State of California.

The Levitts were married in Philadelphia in 1934. At the time of their marriage, they had assets totaling approximately $200. Mr. Levitt was his parents' only son and he supported his family during his lifetime; he received only

nominal gifts and inheritances from his family during his lifetime.

On March 6, 1978, the date of the amendment to the trust, Mr. and Mrs. Levitt had a combined net worth in excess of $975,000, consisting of their residence, a commercial rental building, marketable securities, the outstanding common stock of Levitt International Corp. (all of the stock of which was owned by Mr. and Mrs. Levitt), and cash; on that date all of the assets were the quasi-community property of Mr. Levitt. The combined net worth of the Levitts continued to increase after the amendment of the trust agreement on March 6, 1978.

When the decedent initially executed the revocable trust agreement on June 12, 1975, he named himself as "Trustor" and Mrs. Levitt and Carl Bruce Levitt and Jay Calman Levitt, the two sons of Mr. and Mrs. Levitt, as the "Trustees." When the decedent amended the agreement on March 6, 1978, he named himself and his wife as cotrustees, and provided that upon the death, inability, incapacity, refusal, or resignation of both of the trustees, then the two sons would be successor cotrustees.

As previously indicated, the amended revocable trust agreement provided that if Mrs. Levitt survived decedent, she would receive all of the net income from Trust A, at least annually, and would have a general power of appointment over the trust principal. The amended trust agreement further provided that if Mrs. Levitt survived decedent, she would receive all of the income from Trust B, together with as much or all of the principal as the trustee (Mrs. Levitt) deemed advisable, provided only that the principal of Trust A had first to be exhausted before payments of principal could be made from Trust B.

At the death of the survivor of the decedent and his surviving spouse, the principal of Trust B and any unappointed portion of Trust A was to be distributed equally to Mr. and Mrs. Levitt's two sons or their surviving issue, "upon the principle of representation."

Respondent determined that section 403(e)(3) of ERTA (section 403(e)(3)) limits the amount which petitioner may claim for marital and funeral expense deductions to $945,761 and $9,925, respectively. Under respondent's de-

termination, no trust assets could be allocated to Trust A or will qualify for the marital deduction (because it is respondent's position that the estate tax on decedent's estate is to be computed under the pre-ERTA marital deduction limitation).

The parties have stipulated that petitioner is entitled to deduct funeral and debt expenses in the amounts of $9,925 and $9,621, respectively. The parties have also stipulated that petitioner is entitled to deduct reasonable attorney's fees and miscellaneous administration expenses such as accounting fees incurred in litigating this case.

The sole issue for decision is whether the trust contains a "formula" within the meaning of section 403(e)(3)(B) of ERTA.

By way of general background, we note that an estate tax commentator has stated that:

> The traditional purpose of marital deduction formula clauses has been to reduce or eliminate Federal estate taxes imposed on the estate of the first spouse to die while passing no more to the surviving spouse than is necessary to produce such reduction or elimination. * * * A common drafting technique under [pre-ERTA law] was to leave the surviving spouse the maximum marital deduction and then reduce that bequest to the extent such reduction did not cause estate taxes to be increased. * * * [Mulligan, "Drafting Marital Deduction Formula Clauses after ERTA to Achieve Maximum Tax Savings," 57 J. Taxn. 362 (1982).]

The foregoing statement is quoted to show that formulas similar to the formula in the present case were commonly used prior to ERTA as an estate planning technique, coming into use after the concept of the unified estate tax credit was enacted into law by the addition of section 2010 to the Internal Revenue Code by section 2001(a)(2) and (d)(1) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1846-1847, effective for estates of decedents dying after December 31, 1976.

Under section 2056(c), as in effect on the dates the trust was executed and amended, the maximum estate tax marital deduction was limited to the greater of $250,000 or 50 percent of the value of the adjusted gross estate. Section 403(a)(1)(A) of ERTA amended section 2056 to generally provide for an unlimited estate tax marital deduction for decedents dying after December 31, 1981. Congress, how-

ever, was concerned that this amendment might inadvertently change the effect of formula marital deduction provisions in wills and trusts that had been executed before the enactment of ERTA in a manner inconsistent with a decedent's expressed intent. The Senate Committee Report stated:

Because the maximum estate tax marital deduction under present law is limited to the greater of $250,000 or one-half of the decedent's adjusted gross estate, many existing wills and trusts provide a maximum marital deduction formula clause. The committee is concerned that many testators, although using the formula clause, may not have wanted to pass more than the greater of $250,000 or one-half of the adjusted gross estate (recognizing the prior law limitation) to the spouse. For this reason, a transitional rule provides that the increased estate tax marital deductions, as provided by the bill, will not apply to transfers resulting from a will executed or trust created before the date which is 30 days after enactment, which contains a maximum marital deduction clause provided that: (1) the formula clause is not amended before the death of the decedent to refer specifically to an unlimited marital deduction, and (2) there is not enacted a State law, applicable to the estate, which would construe the formula clause as referring to the increased marital deduction as amended by the bill. [S. Rept. 97-144 (1981), 1981-2 C.B. 412, 462.]

The transitional rule to which this passage from the Senate Committee Report refers is contained in section 403(e)(3) which provides:

(3) If—
(A) the decedent dies after December 31, 1981,
(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and
(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by [section 403(a) of ERTA],

then the amendment made by [section 403(a) of ERTA] shall not apply to the estate of such decedent.
[1981-2 C.B. 326-327.]

Respondent asserts that all the conditions contained in section 403(e)(3) have been met. Therefore, he maintains, petitioner is not entitled to an unlimited marital deduction. Petitioner concedes that the conditions contained in section 403(e)(3)(A), (C), and (D) have been met, but contends that the condition contained in section 403(e)(3)(B) has not been met because the trust does not contain a formula within the meaning of section 403(e)(3)(B).

Section 403(e)(3)(B) requires that a trust contain "a formula *expressly* providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law." (Emphasis added.)

The trust in the present case contains a formula providing that the spouse's trust shall consist of "The Marital Deduction Amount consisting of that amount * * * which will equal the maximum marital deduction allowable * * * reduced by the * * * values of all other property * * * which pass or have passed to Spouse under other provisions of this Trust or otherwise and qualify for the marital deduction; provided that such amount shall be reduced by an amount, if any, needed to increase my taxable estate to the largest amount that will not result in a federal estate tax being imposed * * * , after allowing for the unified credit which has not been claimed for transfers made by me during my life and all other available credits."

Without question, the trust formula initially provides that the spouse will receive under the trust the maximum marital deduction amount. The amount for the benefit of the spouse under the trust, but not the maximum marital deduction amount, is then reduced by the value of other property also qualifying for the marital deduction passing to the spouse outside of the trust. If the trust formula stopped at that point, the intention would seem clear to provide the surviving spouse with the pre-ERTA maximum marital deduction amount. But the trust language does not stop at that point. It goes on to provide that the maximum marital deduction amount is to be *reduced* by an amount necessary to increase the taxable estate to the largest amount that will not result in a Federal estate tax after allowing the unified credit. The trust formula thus does not *expressly* provide that "the spouse is to receive the maximum amount

of property qualifying for the marital deduction"—it expressly provides substantially less. The trust therefore does not contain a formula within the literal terms of section 403(e)(3)(B).

Respondent contends that cases have read the formula provision of section 403(e)(3)(B) to encompass formulas not meeting the literal terms of section 403(e)(3)(B).

Respondent first cites *Estate of Bauersfeld v. Commissioner,* T.C. Memo. 1988-224, in support of his contention that a formula need not expressly provide that the surviving spouse will receive the maximum marital deduction amount to be a formula within the meaning of section 403(e)(3)(B).

In *Estate of Bauersfeld,* the will contained a formula providing that the surviving spouse's trust "shall consist of * * * such residue of my estate which will equal the maximum estate tax marital deduction * * * less the aggregate of the marital deductions, if any, allowable for such tax purposes by reason of property or interests in property passing or which shall have already passed to * * * my spouse otherwise than by the terms of this [will]." 55 T.C.M. 891, 57 P-H Memo T.C. par. 88,224 at 1131. We found that the formula in *Estate of Bauersfeld* was a formula within the meaning of section 403(e)(3)(B).

Respondent asserts, based on *Estate of Bauersfeld,* that a formula need not expressly provide that the surviving spouse receive the maximum marital deduction amount to be a formula within the meaning of section 403(e)(3)(B). Petitioner, however, contends that the formula in *Estate of Bauersfeld* provides that the spouse will receive the maximum marital deduction amount and, thus, is a formula within the literal terms of section 403(e)(3)(B). We agree with petitioner.

The formula in *Estate of Bauersfeld* provided that the testator's spouse would receive the maximum marital deduction amount less the amount of property passing to the spouse outside of the formula that qualified for the marital deduction.

Section 403(e)(3)(B) requires that a will or trust contain "a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital

deduction." Section 403(e)(3)(B) does not, however, require that a surviving spouse "receive the maximum amount of property qualifying for the marital deduction" *exclusively from a will or trust* containing the formula. The formula in *Estate of Bauersfeld* provided, when all amounts passing to the spouse were considered, that the spouse would receive the maximum amount of property qualifying for the marital deduction. Accordingly, the will in *Estate of Bauersfeld* contained a formula within the literal terms of section 403(e)(3)(B). See also *Liberty National Bank & Trust Co. v. United States,* 867 F.2d 302 (6th Cir. 1989); *Estate of Christmas v. Commissioner,* 91 T.C. 769 (1988).

In contrast, the formula in the present case reduces the maximum marital deduction amount not only by the amount of property qualifying for the marital deduction passing to the spouse outside of the trust but also by the amount of property needed to ensure that the unified credit and other credits of the estate are fully utilized. Thus, the formula in the present case does not provide, even when all amounts passing to the spouse are considered, that the spouse will receive the maximum amount of property qualifying for the marital deduction. This intentional reduction in the maximum amount of qualifying property passing to the surviving spouse assured full utilization of available credits while at the same time avoiding increasing the size of the surviving spouse's taxable estate unnecessarily.

Respondent next cites *Estate of Blair v. Commissioner,* T.C. Memo. 1988-296, in support of his contention that a formula need not expressly provide that a surviving spouse will receive the maximum marital deduction amount to be considered a formula within the meaning of section 403(e)(3)(B).

In *Estate of Blair,* the will contained a formula providing that the trust established for the benefit of the surviving spouse:

shall also include the portion of separate property * * * qualifying for the marital deduction of a value, * * * , necessary to obtain for his or her estate the maximum marital deduction allowable * * * , after taking into account any other qualifying marital deduction property passing to the surviving Trustor otherwise than under this subdivision, * * * . However, this sum shall be reduced by an amount, if any, needed to increase the deceased Trustor's taxable estate to the largest amount that

will, *after allowing for the unified credit* * * * and any other allowable credits or deductions, not result in a federal estate tax being imposed * * * . [55 T.C.M. 1246, 1247, 57 P-H Memo T.C. par. 88,296 at 1506. Emphasis in original.]

We held that the formula in *Estate of Blair* was a formula within the meaning of section 403(e)(3)(B) (although we now conclude, *infra*, that such holding was incorrect).

The net effect of the formula in *Estate of Blair* and the formula in the present case is the same. These formulas provide that the surviving spouse is to receive the maximum marital deduction amount reduced by the amount of property otherwise passing to the surviving spouse, less the amount needed to ensure that the estate's credits are fully utilized.

Respondent contends that *Estate of Blair* stands for the proposition that section 403(e)(3)(B) is satisfied by any formula that defines the marital gift "as a function of the maximum allowable marital deduction" amount. Thus, respondent contends that the formula in the present case satisfies section 403(e)(3)(B) because the formula in the present case and *Estate of Blair* are indistinguishable.

Petitioner asserts that *Estate of Blair* did not correctly apply our decisions in *Estate of Bruning v. Commissioner*, T.C. Memo. 1988-5, affd. per curiam 888 F.2d 657 (10th Cir. 1989), and *Estate of Neisen v. Commissioner*, 89 T.C. 939 (1987), affd. per curiam 865 F.2d 162 (8th Cir. 1988), and, therefore, *Estate of Blair* should not be relied on in the present case. We agree with petitioner.

Section 403(e)(3)(B) requires that a will or trust contain a "formula expressly providing that the spouse is *to receive* the maximum amount of property qualifying for the marital deduction allowable." (Emphasis added.) In *Estate of Bruning v. Commissioner, supra*, we analyzed the legislative history of section 403(e)(3) and concluded that "Congress was not concerned with clauses that *merely mention* the maximum marital deduction, but with clauses under which the amount of property transferred to the surviving spouse is determined *solely* by reference to the maximum marital deduction." (Emphasis added.) 54 T.C.M. 1469, 1471, 57 P-H Memo T.C. par. 88,005 at 30, 32.

In *Estate of Neisen v. Commissioner, supra,* we recognized a distinction, based on the language of section 403(e)(3), between a formula expressly providing that the surviving spouse was to receive the maximum marital deduction amount and a formula providing that the spouse was to receive the minimum marital deduction amount needed to minimize taxes. A formula providing that the surviving spouse was to receive the maximum marital deduction amount *was* found to be a formula within the meaning of section 403(e)(3)(B). However, a formula, as in *Estate of Neisen,* providing that the spouse was to receive "the lesser" of the "maximum marital deduction" amount or the "minimum marital deduction" amount needed to minimize estate taxes, *was not* found to be a formula within the meaning of section 403(e)(3)(B). Thus, a formula must provide that a spouse will receive, not merely mention, the maximum marital deduction amount to be considered a formula within the meaning of section 403(e)(3)(B).

In *Estate of Blair,* we noted the distinction recognized in *Estate of Neisen* and stated: "In this case, we can make no such distinction because the trust expressly provides that the [surviving spouse] is to [receive] the maximum amount of property qualifying for the marital deduction." 55 T.C.M. 1246, 1248, 57 P-H Memo T.C. par. 88,296 at 1506, 1508. We find this analysis to be incomplete.

The formulas in *Estate of Blair* and the present case initially provide that each surviving spouse is to receive the maximum marital deduction amount. However, the amount each spouse is to receive is reduced by the amount needed to ensure that the credits of the estates are fully utilized. Thus, the formulas in *Estate of Blair* and the present case do not, when read in their entirety, "[provide] that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law." Sec. 403(e)(3)(B). A formula must provide that the spouse is to receive, not merely mention in isolation, the maximum amount of the marital deduction to be a formula within the meaning of section 403(e)(3)(B).

Accordingly, we hold that the formula in the present case is not a formula within the meaning of section 403(e)(3)(B). Consequently, the result reached in *Estate of Blair v.*

*Commissioner, supra,* incorrectly applied our decisions in *Estate of Neisen v. Commissioner, supra,* and *Estate of Bruning v. Commissioner, supra,* and is expressly disapproved. Our holding is in accord with the intent of Congress as well as our decisions in *Estate of Neisen v. Commissioner, supra,* and *Estate of Bruning v. Commissioner, supra.*

Congress created section 403(e)(3) out of concern that many testators, although using a formula clause, may not have wanted to pass, under a will or trust executed before the enactment of ERTA in 1981, more than the greater of $250,000 or one-half of the adjusted gross estate (recognizing the prior law limitation) to the spouse. S. Rept. 97-144 (1981), 1981-2 C.B. 412, 462. Thus, the purpose of section 403(e)(3) was to preserve, not frustrate, the testator's intent. *Estate of Bruning v. Commissioner,* 888 F.2d at 659; *Liberty National Bank & Trust Co. v. United States,* 867 F.2d at 304.

Respondent observes that *his* division of the estate (whereby all of the assets held in the Levitt trust would be distributed to fund Trust B) results in an approximately equal allocation between the surviving spouse and the children, before accounting for the value of the surviving spouse's interest in the community property. Respondent goes on to argue that *"absent the protection of the transitional rules,"* all of the estate except the unified credit cutback amount, which respondent computes to be $399,944, will pass to the surviving spouse pursuant to the "maximum marital deduction formula clause." (Emphasis added.) The children, he says (meaning, of course, the decedent's two adult sons), will be substantially disinherited from Samuel I. Levitt's estate, except to the extent provided for by the surviving spouse, a result which the transitional rules were expressly adopted to avoid.

While we are touched by respondent's solicitude for the welfare of the decedent's two adult sons, we cannot believe, since $143,327 in Federal estate tax is at stake, that the sons' welfare is actually respondent's primary concern. Decedent's intent is derived from the language and operation of the trust. *Estate of Bruning v. Commissioner,* 888 F.2d at 659. The trust provisions simply do not support

respondent's professed concern. The provisions of the trust, of which Mrs. Levitt is the sole trustee during her lifetime, give her unlimited access to all of the income and principal of Trust A *and* Trust B after the decedent's death, provided only that the principal of Trust A must be used up before the principal of Trust B can be invaded.

In *Estate of Bruning v. Commissioner,* 888 F.2d at 660, the Tenth Circuit disagreed with the Commissioner's assertion that any formula referring to the maximum marital deduction is a formula within the meaning of section 403(e)(3)(B). As there stated:

Congress desired to carry out a decedent's intent. If it can be discerned from the will [here, the trust] that decedent would have desired the unlimited marital deduction permitted by ERTA, the limitation was not intended to apply. Because decedent * * * expressly bequeathed an amount to achieve a minimum payment of federal estate taxes, we conclude that decedent's intent was clearly expressed and the [trust] does not contain a maximum marital deduction formula clause within the meaning of section 403(e)(3).

Nothing in the revocable trust agreement before us could lead a reasonable person to believe that the decedent's primary concern was to limit the amount going to his surviving wife to protect the interests of his other heirs. On the contrary, the decedent's trust *only* shows concern for the welfare of the person who was his wife of 44 years when the amended trust agreement was signed in 1978. It seems highly unlikely, if not inconceivable, given the tax reduction language of Trust A and the dispositive provisions of the trust instrument to which we have alluded that decedent would willingly have foregone the benefit of a $143,327 estate tax savings for his surviving wife.

We therefore conclude that decedent's intent in the present case was to minimize Federal estate taxes, and not to limit the amount of property passing to the surviving spouse. We base this conclusion on the language and operation of the formula itself and the trust's entire dispository scheme, which for all intents and purposes solely benefited the surviving spouse.

Respondent points out that California, by former Probate Code sections 1034 and 1038.14, has adopted the transitional rule of section 403(e)(3). Respondent further cites *In*

*re Estate of Libeu,* 205 Cal. App. 3d 1436, 253 Cal. Rptr. 456 (1988), for the proposition that California has, as stated on brief, "broadened the definition of the marital deduction formula clause to include all gifts that evidence an intention to realize for the estate the maximum marital deduction." We do not agree.

In *In re Estate of Libeu,* the court states that "the California Legislature enacted [California's] former Probate Code [provision] which adopted in essential part the federal transitional rule." 253 Cal. Rptr. at 462. California Probate Code section 1034 provided that if a pre-ERTA will "indicates the testator's intention to make a gift that will provide the testator's estate with the *maximum marital deduction,* then the will passes to the recipient an amount equal to the maximum marital deduction which would have been allowed as of the date of the testator's death for federal estate tax purposes [pre-ERTA]." (Emphasis added.) California Probate Code section 1038.14 extends section 1034 to include formula gifts or transfers made through inter vivos trusts. The California Probate Code provisions insure that the property passing to the surviving spouse under State law is equal to the marital deduction allowed for Federal estate tax purposes.

In the *Libeu* case, the will provided in pertinent part as follows:

I give to my wife, HELEN L. Libeu, should she survive me by four months, a fractional share of my estate, including the property described in paragraph SECOND above, which shall be equivalent to the maximum marital deduction obtainable in fixing the Federal Estate Tax upon all of the items included in my gross estate for Federal Estate Tax purposes (whether or not passing under this Will or included in my estate for purposes of actual probate). There shall be subtracted from such fractional share any property passing to my wife outside of probate which qualifies for the marital deduction. * * * [253 Cal. Rptr. at 461.]

### Respondent states on brief that:

Inasmuch as this provision defines the gift in terms of the maximum marital deduction, it is substantially identical to the dispositive provisions of the Levitt Trust. Both instruments direct that the gift shall be reduced to account for estate property which passed to the spouse outside of the trust/probate.

The dispositive provision of the Levitt Trust is distinguishable from that of the Libeu will in that the formula further refines the gift by

including the "unified credit cut-back clause." The existence of this clause in no way distinguishes the marital deduction clause in decedent's will from that in *Libeu*, for the effect of this clause is to ensure full use of the credit; it does not alter the fact that the amount the spouse is to receive is determined with reference to the allowable marital deduction.

Unfortunately for respondent's position, the conclusion he draws is based solely upon wishful thinking. At no place in the Libeu will is there any provision for reducing the maximum marital deduction bequest by an amount necessary to fully utilize the unified credit, as there is in the Levitt trust provision. The fact that, as stated in respondent's brief, "the amount the spouse is to receive is determined with reference to the allowable marital deduction" has no utility whatever in assisting the determination of whether a pre-ERTA will or trust "contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by federal law." Sec. 403(e)(3)(B). We consequently conclude that neither former section 1034 of the California Probate Code nor *In re Estate of Libeu, supra*, in any way assists or supports respondent's position.

As a result of the foregoing, applying section 403(e)(3) to the present case would be contrary to decedent's intent and, thus, the purpose for which section 403(e)(3) was created.

We conclude by noting that to date the decided cases which have considered maximum marital deduction formula provisions *not* containing a diminution to utilize the maximum unified estate tax credit have uniformly supported respondent's position here. See *Estate of Bauersfeld v. Commissioner, supra; Liberty National Bank & Trust Co. v. United States, supra; Estate of Christmas v. Commissioner, supra;* and *In re Estate of Libeu, supra.* On the other hand, the cases dealing with marital deduction formula provisions which *do* contain a diminution provision utilizing the maximum estate tax unified credit, with the sole exception of *Estate of Blair v. Commissioner, supra*, support petitioner's position. See *Estate of Neisen v. Commissioner, supra*, and *Estate of Bruning v. Commissioner, supra.* Petitioner's formula falls within the *Neisen-Bruning* category, and for the reasons outlined above, we conclude that petitioner's

position is correct and that *Estate of Blair* was incorrectly decided.

We hold that the trust does not contain a "formula" within the meaning of section 403(e)(3)(B). Accordingly, section 403(e)(3) does not preclude petitioner from qualifying for an unlimited marital deduction under section 2056 as amended by ERTA. To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

KÖRNER, HAMBLEN, COHEN, CLAPP, SWIFT, WRIGHT, PARR, and COLVIN, *JJ.,* agree with the majority.

---

APPENDIX

ARTICLE II—Distribution of Income and Principal

A. During the lifetime of the Trustor, the Trustee shall pay to or for the benefit of Trustor and Trustor's spouse HELEN STEIN LEVITT, hereinafter referred to as Spouse, during their joint lifetimes, in monthly or other convenient installments, not less often than annually, all of the net income and so much of the trust principal as the Trustee deems necessary for the care, support and maintenance of the Trustor and Spouse, without apportionment.

B. If the Trustor's Spouse survives the Trustor, the Trustee shall divide the Trust Estate, without being required to make physical segregation thereof except to the extent necessary to make distribution, into shares as follows:

1. One share, to be known as Trust A, shall consist of the following:

(i) The one-half interest of the Spouse in the community property of our marriage to the extent included in the Trust Estate; and

(ii) The Marital Deduction Amount consisting of that amount of the balance of the Trust Estate which will equal the maximum marital deduction allowable for federal estate

tax purposes on my death, reduced by the final federal estate tax values of all other property interests includible in my gross estate for federal tax purposes which pass or have passed to Spouse under other provisions of this Trust or otherwise and qualify for the marital deduction; provided that such amount shall be reduced by an amount, if any, needed to increase my taxable estate to the largest amount that will not result in a federal estate tax being imposed by reason of my death, after allowing for the unified credit which has not been claimed for transfers made by me during my life and all other available credits taken against the federal estate tax.

(iii) The Trustee shall satisfy the Marital Deduction Amount in cash or in kind, or partly in each, with assets eligible for the marital deduction for federal estate tax purposes. The assets so allocated in kind shall be deemed to satisfy the Marital Deduction Amount on the basis of their value at the date or dates of distribution of Trust A.

2. One share, to be known as Trust B, shall consist of the balance of the Trust Estate.

3. The terms "gross estate", "marital deduction", and "interests in property which pass or have passed", as used in this Trust, shall have the same meanings as they have under the marital deduction provisions of the Internal Revenue Code. It is intended that the provisions of this Trust relating to the marital deduction, including any power, duty or discretionary authority, comply with the marital deduction provisions of the Internal Revenue Code and they shall be construed to conform to that intent and to the extent any such provision cannot be construed it shall be deemed to be void.

4. If my spouse does not survive me, the entire Trust Estate shall be held, managed, and distributed in accordance with the provisions of this Trust relating to Trust B.

C. Trust A shall be held, managed and distributed as follows:

1. The Trustee shall distribute the net income to Spouse during his lifetime in monthly or other convenient installments, not less often than annually. In addition, the Trustee shall distribute to Spouse, or to any other person,

such amounts of the principal of Trust A, up to the whole thereof, as Spouse may direct from time to time. In the event Spouse for any reason is unable to request distributions to himself of principal of Trust A, the Trustee shall have discretion to distribute to or for his benefit such amounts of the principal up to the whole thereof, as the Trustee may deem necessary for his care, support and maintenance.

2. My spouse shall have the absolute power exercisable only by a written instrument other than a Will delivered to the Trustee during his lifetime to appoint any part of the principal and any undistributed net income of Trust A in favor of himself or any person.

3. Should my Spouse fail to exercise the foregoing power of appointment, then upon his death the Trustee shall add the remainder of Trust A to Trust B, to be distributed in accordance with the provisions hereinafter set forth relating to Trust B.

D. Trust B shall be held, managed and distributed as follows:

1. The Trustee shall pay to or for the benefit of my Spouse during his lifetime the entire net income, in monthly or other convenient installments, not less other than annually.

E. If the income from the Trusts to which my Spouse may be entitled shall be insufficient in the discretion of the Trustee to provide for his reasonable care, support and maintenance, the Trustee may pay to said Spouse or apply for his benefit so much of the principal up to and including the whole of the respective Trusts as the Trustee may deem advisable; provided, however, that the principal of Trust A must be exhausted before payments from principal may be made from Trust B.

F. This Trust shall terminate upon the death of the survivor of the Trustor and Trustor's Spouse. The Trustee shall distribute Trust B and any portion of Trust A not disposed of as hereinbefore provided, to the children of the Trustor, namely: CARL BRUCE LEVITT and JAY CALMAN LEVITT, in

equal shares. If either of said children should not then be living, said share shall be distributed to his then living lawful issue upon the principle of representation.

G. The words "lawful issue" as used in this instrument shall mean and refer to natural issue. It shall not include children by adoption.

*Note:* Article I provides, among other things, that "The singular shall include the plural wherever necessary, and one gender shall include any other gender wherever necessary."

---

CHABOT, *J.,* concurring in the result: I agree with the majority's result. I also agree with the first half of the majority's opinion, which concludes that, in the instant case, the relevant language in the document is not a "formula", and thus the estate qualifies for the unlimited marital deduction. However, I disagree with the majority's effort to discern what the testator's intent would have been in 1978 if he had known that in 1981 the Congress was going to permit an unlimited marital deduction.

In general, subtitle A of title IV of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 172, 299-305; hereinafter sometimes referred to as ERTA) had the effect of reducing Federal estate and gift taxes. The Congress increased the unified credit (ERTA section 401), reduced estate and gift tax rates (ERTA section 402), and provided an unlimited marital deduction (ERTA section 403). The Congress provided that the unlimited marital deduction was to apply to estates of decedents dying after December 31, 1981 (ERTA section 403(e)(1)), and gifts made after that same date (ERTA section 403(e)(2)).

However, the Congress was aware that some wills and other estate-planning documents disposed of estates by incorporating in some fashion the limited marital deduction provisions of prior law. The Congress was concerned that the change it was enacting in the marital deduction provisions might cause some estates to be distributed in ways that were significantly different from what the testa-

tors had contemplated. In an attempt to deal with this problem, the Congress provided a "transitional rule" (ERTA section 403(e)(3)) as an exception to the general effective date rule.

The Congress had several choices available to it in seeking to provide an "out" for testators who had relied on the law as it existed when they planned their estates. For example, the Congress could have allowed the executor to elect whether the unlimited marital deduction or prior law should apply to the estate under his or her control. Alternatively, the Congress could have opted to create an exception dependent on a finding of the testator's intent.

The Congress chose not to follow either approach. Instead, the Congress chose to use a relatively simple, mechanical approach based on the presence or absence of a formula clause in the relevant document. Section 403(e)(3) states, in pertinent part, as follows:

(3) If—
  (A) * * *,
  (B) * * * property passes * * * under a *will* * * * *or a trust* * * * *which contains a formula expressly providing* that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
  (C) *the formula* referred to in subparagraph (B) *was not amended to refer specifically* to an unlimited marital deduction * * * , and
  (D) * * * ,

then the amendment made by subsection (a) [the unlimited marital deduction] shall not apply * * * .
[Emphasis added.]

Thus, the provision that the Congress enacted, by its terms focusses on whether a certain type of language appears in a certain type of document, and whether that language was "amended" in a certain way. ERTA section 403(e)(3) does *not* provide that if there is some other, extrinsic evidence that the testator would have wanted the new law to apply, then his or her wishes would be respected.

Furthermore, for those testators who wished to take advantage of the newer, more generous marital deduction rules, the Congress provided explicit directions in subparagraphs (B) and (C) of ERTA section 403(e)(3). Under

subparagraph (B), the testator could execute a new will. Under subparagraph (C), the testator could amend the formula provision "to refer specifically to an unlimited marital deduction".

The "formula clause" portion of ERTA section 403(e)(3)(B) deals only with the presence or the absence of a particular provision in the document. We should not begin considering other factors simply because we believe that the Congress' intent would be better served by doing so. The Congress recognized that the changes in the law, while intended to be helpful to those involved, were likely to create problems for some; for those people it carved out this limited exception.

As we said in another context (*Ridder v. Commissioner*, 76 T.C. 867, 876 (1981)):

> In drafting section 46(e)(3)(B), Congress could have chosen a rule based upon the benefits and burdens of ownership in light of all the relevant facts and circumstances. (See, e.g., *Swift Dodge v. Commissioner*, 76 T.C. 547 (1981)). But they did not. Instead, Congress decided to impose two hard-and-fast tests, one of which petitioner herein has failed. In effect, Congress chose a more easily administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. Not only was this choice at least arguably reasonable, it is not for us in any case to pass upon the wisdom of legislation. *Nebbia v. New York*, 291 U.S. 502, 537-538 (1934). See also *Commissioner v. Kowalski*, 434 U.S. 77, 95-96 (1977).

To the same effect, see *Carlson v. Commissioner*, 712 F.2d 1314, 1316 (9th Cir. 1983), affg. 79 T.C. 215 (1982).

We should respect the Congress' choice of the triggering mechanism for application of the old law, just as we respect the Congress' choice of the general effective date of December 31, 1981. We do not evaluate, for example, whether the Congress' purpose could have been better served by making the unlimited marital deduction apply to the estates of decedents dying after the date of enactment (August 13, 1981), although there is no apparent explanation for why Congress chose December 31, 1981, as the cutoff date. I suggest that it is similarly bootless to speculate as to whether the Congress' purpose would have been better served by a different formulation of the transitional rule's limited exception.

I agree with the majority's conclusion that, based solely upon the language of the document, the testator is within

the set of testators that are to be governed by the unlimited marital deduction rules. That is, the trust language provides for the possibility that the widow would receive less than the maximum marital deduction amount and thus, (1) is not a "formula" described in ERTA section 403(e)(3), (2) the transitional rule does not apply, and (3) under the general effective date (ERTA section 403(e)(1)) the estate is entitled to the unlimited marital deduction. I also agree with our opinion in *Estate of Christmas v. Commissioner,* 91 T.C. 769, 776 (1988), in which we stated: "We are not free to wander outside the confines of a testamentary instrument to determine, under State law, the intent of a decedent where the language contained in that instrument causes it to fall squarely within a set of criteria established by Congress." However, I would go beyond *Christmas.* The search for a testator's hypothetical intent as to a matter almost certainly not contemplated by the testator—i.e., what the testator would have wanted to do if the Congress were to change the estate tax in a certain way—is not within the scope of ERTA section 403(e)(3)(B), whether or not that search is confined to the testamentary instrument. In the instant case, the majority's examination of whether the testator intended to provide more or less of his estate to his widow, as opposed to his other beneficiaries, is contrary to the text of the statute. I also believe that such consideration will give rise to additional litigation. Furthermore, as demonstrated by the discussion by the majority and by the dissent, it is generally difficult to ascertain what a testator would have intended if he or she had considered the possibility of this particular legislative change in the marital deduction limitation.

Other opinions in this area of the law also have focussed in part on testators' intent. In some instances, testimony was offered and admitted in order to present a complete record, on the basis of which the court could make factual findings of such intent. I now believe that the courts erred in going down that path. I adopt for myself, and commend to my colleagues, the words of Justice Frankfurter, dissenting in *Henslee v. Union Planters Bank,* 335 U.S. 595, 600 (1949), as follows:

Wisdom too often never comes, and so one ought not to reject it merely because it comes late. * * *

HAMBLEN and WHALEN, *JJ.*, agree with this concurring opinion.

---

WELLS, *J.*, concurring: I agree with the majority's refusal to apply the transitional rule to petitioner. Like Judge Chabot, however, I also believe that we should address squarely the question of whether evidence of testamentary intent—outside the confines of the marital deduction clause itself—may be considered in deciding whether such clause is a "formula" under section 403(e)(3)(B) of ERTA. I would answer that question in the affirmative. I fail to see the "wisdom" in ignoring such evidence of the testator's intent in the face of Congressional intent "to preserve rather than defeat the testator's intent." *Estate of Bruning v. Commissioner*, 888 F.2d 657, 659 (10th Cir. 1989); *Liberty National Bank & Trust Co. v. United States*, 867 F.2d 302, 304 (6th Cir. 1989). See also *Estate of Neisen v. Commissioner*, 89 T.C. 939, 942-943 (1987), affd. per curiam 865 F.2d 162 (8th Cir. 1988).

Although the majority concludes that the clause in question is not one which provides that the decedent's spouse *"is* to receive" the maximum marital deduction amount (majority op. at 299), the majority does not end its opinion with such express holding but continues with a discussion of the decedent's overriding intent vis-à-vis his spouse. I believe that such discussion, without an explicit recognition of its contribution to the majority's conclusion, obfuscates this Court's stated interpretation of the transitional rule. Moreover, in view of the legislative purpose of the transitional rule, we need not couch our discussion of intent as dicta but should incorporate such discussion into our holding herein.

Section 403(e)(3)(B) of Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, is not clear. The transitional rule does not tell us what types of marital deduction clauses are encompassed by the rule, hence the

confusion in the cases thus far. As I see it, we have two options in applying the ambiguous provision: we can either attempt to "force" some clarity on the statute judicially, or we can look to the overriding purpose and spirit of the statute in applying it to individual cases. In *Estate of Bruning v. Commissioner,* T.C. Memo. 1988-5, we opted for the first choice. In that opinion, we stated that Congress was concerned in section 403(e)(3)(B) only with "clauses under which the amount of property transferred to the surviving spouse is determined *solely* by reference to the maximum marital deduction." 54 T.C.M. 1469, 1471, 57 P-H Memo T.C. par. 88,005 at 32. (Emphasis supplied.) In essence, we added the word "solely" to section 403(e)(3)(B) in *Estate of Bruning,* creating a bright line test for its application.[1] Neither the Tenth Circuit in affirming *Estate of Bruning* nor any other subsequent opinions cited by the majority, however, have limited the analysis of section 403(e)(3)(B) to that bright line test. Instead, the trend in the cases has been to emphasize the legislative purpose of the transitional rule, "to preserve rather than defeat" testamentary intent.

In *Estate of Bruning,* the Tenth Circuit (affirming the Tax Court) stated that:

To determine whether the limitation of section 403(e)(3) applies, the will and trust must be examined to determine decedent's intent at the time of execution of the will.  * * *

\* \* \* \* \* \* \*

Congress desired to carry out a decedent's intent. If it can be discerned from the will that decedent would have desired the unlimited marital deduction permitted by ERTA, the limitation was not intended to apply.
  [888 F.2d at 659-660].

The Sixth Circuit in *Liberty National Bank & Trust Co. v. United States* (which was cited by the Tenth Circuit in *Estate of Bruning*) similarly reasoned that "To determine whether the transitional rule  * * *  applies to limit decedent's marital deduction, the will must be examined to determine the testator's intent." 867 F.2d at 304. See also *Estate of Christmas v. Commissioner,* 91 T.C. 769, 776

---

[1]We found support for our position by focusing attention on the phrase "is to receive" in sec. 403(e)(3)(B), as done by the majority in the first part of its opinion in the instant case.

(1988) (characterizing *Estate of Neisen* as involving the testator's intent and failing to mention the bright line test adopted in *Estate of Bruning*); *Estate of Bauersfeld v. Commissioner*, T.C. Memo. 1988-224 (failing to mention the "solely by reference to" standard of *Estate of Bruning*). I agree with the Tenth Circuit's and Sixth Circuit's focus on testamentary intent. Consideration of intent harmonizes with the spirit and purpose of the transitional rule.

A refusal to consider evidence of the testator's intent in deciding whether a "formula" exists may lead to troublesome results. For example, in *Estate of Blair v. Commissioner*, T.C. Memo. 1988-296 (on appeal, 10th Cir., Jan. 22, 1990), the evidence of record contained an affidavit made by the testator's attorney which stated that the attorney had advised the testator with respect to the ERTA transitional rule. The affidavit indicated that the testator had decided not to amend his trust because he apparently felt it was not necessary in light of its "language which would leave only the unified credit in his estate." The attorney's advice and the testator's perceived reaction were not considered by the Court, which found the trust provision to be unambiguous.[2] If the transitional rule is truly concerned with preserving the testator's intent in the face of a change in the law, such evidence should be critical to its application.[3] A testator's informed decision to leave his will or trust "as is" notwithstanding the ERTA transitional rule—and his reason for doing so (i.e., desire to limit the bequest to the spouse, or alternatively, belief that the clause in question was not covered by such rule) would constitute direct evidence of

[2]Unlike the instant case, in which the majority's discussion of testamentary intent is confined to "the language and operation of the trust" itself (majority op. at 300), *Estate of Blair v. Commissioner*, T.C. Memo. 1988-296, (on appeal, 10th Cir., Jan. 22, 1990), involved the additional issue of the admissibility of "extrinsic" evidence of intent (that is, evidence outside the four corners of the testamentary instrument). The opinion in *Estate of Blair*, citing the State law rule against admitting extrinsic evidence to vary the language of an "unambiguous" instrument, disagreed with the taxpayer's claim that the instrument in question was ambiguous. The taxpayers had based that claim on the meaning of various terms when used in a community property estate plan. *Estate of Blair* does not address the question of whether evidence of advice from an attorney regarding the transitional rule might in itself disclose an ambiguity in a testamentary instrument. See also *Estate of Bruning v. Commissioner*, 888 F.2d 657, 659 (10th Cir. 1989) (citing Colorado law regarding intent in an "unambiguous" will); *Liberty National Bank & Trust Co. v. United States*, 867 F.2d 302, 304 (6th Cir. 1989) (the laws of Kentucky control the construction of the will).

[3]Our opinion in *Estate of Blair* preceded the decisions of the Sixth and Tenth Circuits, respectively, in *Liberty National Bank & Trust Co. v. United States*, supra, and *Estate of Bruning v. Commissioner*, supra.

the testator's *actual* intent rather than a "hypothetical intent as to a matter * * * not contemplated by the testator." (See Judge Chabot's concurring opinion at 310.)

While it may be true that a search for testamentary intent in applying the ERTA transitional rule will give rise to some additional litigation, such consideration should not be determinative. Moreover, further litigation concerning testamentary intent may be preferable to further litigation over the legal question of "what constitutes a maximum marital deduction formula" within the meaning of section 403(e)(3)(B), a question for which I believe there is no clear answer.

Because the totality of facts found by the majority in the instant case, including those that bear on the decedent's intent, indicate that the decedent did not intend to limit the amount of the bequest to his spouse, I would conclude that the decedent's estate is not a member of the class that Congress "intended to exclude from the unlimited marital deduction." *Estate of Christmas v. Commissioner, supra* at 777-778. Accordingly, I concur in the majority's result.

SWIFT, *J.,* agrees with this concurring opinion.

---

RUWE, *J.,* dissenting: Prior to the enactment of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, the marital deduction was limited to the greater of $250,000 or one-half of the adjusted gross estate. ERTA removed these dollar limits for decedents dying after December 31, 1981. Congress was aware that many people had executed wills (and trusts), prior to ERTA, containing maximum marital deduction formula clauses with the expectation that bequests pursuant to such formulas would be limited to the greater of $250,000 or one-half of the adjusted gross estate. Because use of the new unlimited marital deduction in these formula bequests might distort a decedent's intention by greatly increasing the bequest to the surviving spouse, Congress enacted the transitional rule contained in section 403(e)(3) of ERTA. The purpose of section 403(e)(3) was to prevent an unintended marital

bequest *in excess of* the maximum amount of the marital deduction in effect at the time a pre-ERTA will or trust was executed. *Estate of Bruning v. Commissioner,* 888 F.2d 657 (10th Cir. 1989), affg. a Memorandum Opinion of this Court; *Estate of Christmas v. Commissioner,* 91 T.C. 769, 773-774 (1988); S. Rept. 97-144 (1981), 1981-2 C.B. 412, 462.

Unlike many limitations on deductions, Congress was not primarily concerned about lost revenue when it enacted the transitional rule. Congress specifically provided in section 403(e)(3) that a decedent could obtain the maximum unlimited marital deduction simply by changing his or her will (or trust) subsequent to ERTA's enactment. Congress also provided that the individual States could pass legislation making the new unlimited marital deduction applicable to pre-ERTA instruments containing maximum marital deduction formulas.[1]

The trust in issue provides that the amount to be placed into Trust A is "The Marital Deduction Amount consisting of that amount of the balance of the Trust Estate which will equal the maximum marital deduction allowable for federal estate tax purposes on my death." This is clearly a maximum marital deduction formula clause. The trust further provides that the maximum marital deduction amount shall be *reduced,* if necessary, in order to take full advantage of the unified credit and any other available credits. This provision does not eliminate the existence or operative effect of the maximum marital deduction formula clause nor does it eliminate the problem that Congress was addressing through enactment of section 403(e)(3).

The majority and concurring opinions attempt to apply a literal approach by finding that the provision immediately after the maximum marital deduction formula clause removes this case from the purview of section 403(e)(3). For the reasons previously stated, I do not agree that this is a correct literal application of the statute. However, even if a literal reading of the statute supported the majority's result, such "literal interpretations of statutes must be rejected if they lead to results which are absurd in light of

---

[1]At the time of his death, decedent resided in California. California passed legislation in 1982 providing that pre-ERTA instruments containing maximum marital deduction formula clauses will be construed as if the pre-ERTA marital deduction limitations apply. Cal. Prob. Code sec. 1034 (current version at Cal. Prob. Code sec. 21523 (West Supp. 1990)).

Congressional intent." *Thoburn v. Commissioner,* 95 T.C. 132, 149 (1990).

The congressional intent behind section 403(e)(3) has been accurately described in the following manner:

The purpose of this transitional rule is to prevent an unintended testamentary disposition in wills executed before September 12, 1981, that contain a maximum marital deduction "formula clause." Congress was concerned that formula clauses in wills drafted prior to 1981 could operate to make the marital deduction applicable to the entire adjusted gross estate rather than fifty percent of the estate. S.REP. No. 201, 97th Cong., 1st Sess. 163-64 (1981), U.S. Code Cong. & Admin. News 1981, p. 105. Therefore the transitional rule stated that the marital deduction for wills with a formula clause written before September 2, 1981, and in which the testator died after December 31, 1981, the marital deduction would be fifty percent or $250,000, unless the will was subsequently amended to refer to the unlimited marital deduction or state law construed the formula clause as referring to the marital deduction in its unlimited amended amount. * * * [*Liberty Nat. Bank & Trust Co. v. United States,* 867 F.2d 302, 303-304 (6th Cir. 1989).]

At the time the trust was last amended in 1978, the decedent would clearly have intended that the maximum amount that could pass to Trust A for his wife's benefit would be dependent upon the pre-ERTA maximum marital deduction (the greater of $250,000 or one-half of his adjusted gross estate). This is exactly the type of situation that Congress had in mind and for which section 403(e)(3) was enacted.

In arriving at its conclusion, the majority overrules our prior opinion in *Estate of Blair v. Commissioner,* T.C. Memo. 1988-296, on appeal (10th Cir., Jan. 22, 1990). The formula in *Estate of Blair* is indistinguishable from the formula in this case. The majority concludes that *Estate of Blair* incorrectly applied our opinions in *Estate of Neisen v. Commissioner,* 89 T.C. 939 (1987), affd. per curiam 865 F.2d 162 (8th Cir. 1988), and *Estate of Bruning v. Commissioner, supra.*

The language used in the instruments construed in *Estate of Neisen* and *Estate of Bruning* is clearly different from that used here and in *Estate of Blair.* The marital bequest in *Estate of Neisen* provided for an alternative between "the lesser of (a) the maximum marital deduction allowable * * * [or] (b) the minimum marital deduction which, after

taking into account the unified credit * * * will result in no federal estate tax." *Estate of Neisen v. Commissioner,* 89 T.C. at 940. Relying upon what we found to be the expressed intent in alternative (b), we concluded that "it is a formula expressly providing that the spouse is to receive the minimum amount necessary to ensure that decedent's estate pays the least amount of Federal estate tax" and, therefore, was not a maximum marital deduction formula within the meaning of section 403(e)(3). *Estate of Neisen v. Commissioner,* 89 T.C. at 942.

The formula in *Estate of Bruning* is practically the same as that in *Estate of Neisen.* In *Estate of Bruning,* the amount to be placed in a marital trust was the lesser of (1) the maximum amount allowable as a marital deduction or "(2) the amount which, after taking into account all credits, exemptions and deductions, other than the marital deduction * * * will result in the elimination of all federal estate tax in Settlor's estate." *Estate of Bruning v. Commissioner,* 888 F.2d at 658. The Tenth Circuit relied upon the specific language in alternative (2) of the trust in finding that the formula was not a maximum marital deduction formula within the meaning of section 403(e)(3).

Reading the disposition clause in its entirety convinces us that decedent's primary intent was to minimize the estate taxes rather than to limit the marital deduction to the amount that was the maximum (the greater of one-half of the adjusted gross estate or $250,000) permissible under the law in effect at the time he executed the will. * * *

      *   *   *   *   *   *   *

Because decedent here *expressly* bequeathed an amount to achieve a minimum payment of federal estate taxes, we conclude that decedent's intent was clearly expressed and the will does not contain a maximum marital deduction formula clause within the meaning of section 403(e)(3). [Emphasis added.]

 [*Estate of Bruning v. Commissioner, supra* at 659-660.]

The formula in the instant case does not contain an express statement that the decedent intended "the elimination of all federal estate tax" or that he wanted the amount placed in Trust A to "result in no federal estate tax." Immediately following the maximum marital deduction formula clause, is a provision that the formula amount shall, under certain circumstances, be reduced by an amount

necessary to *increase* the taxable estate to "the largest amount that will not result in a federal estate tax being imposed" after allowing for available credits. This reference to an "amount that will not result in a federal estate tax being imposed" was a limitation on the amount by which the taxable estate was to be *increased* to take full advantage of credits that would otherwise go unused. The only effect that this provision can have on decedent's estate is to allow it to take full advantage of available credits. The provision would not come into play unless the amount passing to Trust A under the maximum marital deduction formula clause resulted in unused credits. There could be no *unused* credits, unless there was no estate tax liability to begin with. Therefore, the provision to take full advantage of the credits by reducing the amount going into Trust A could not have been intended to reduce or eliminate estate tax on decedent's estate.

The following illustrates how the provisions for funding Trust A operate. The unified credit available at decedent's death was $121,800. That is the amount of tax that would be due on a taxable estate of $400,000.[2] The provision for reducing the maximum marital deduction formula clause amount would not be activated unless full use of the maximum marital deduction would cause the taxable estate to be less than the $400,000 that would be necessary to fully absorb the unified credit. If use of the maximum marital deduction would cause the taxable estate to be too small to fully utilize the credit, it would already be apparent that there would be no estate tax liability.[3] It follows that

---

[2] The amount of the unified credit available in 1978, when decedent amended the trust was $34,000. This was the tax on a taxable estate of $134,000. The analysis contained herein produces the same conclusion regardless of the unified credit amount.

[3]

| | Example 1 | Example 2 | Example 3 |
|---|---|---|---|
| Adjusted gross estate | $1,000,000 | $800,000 | $600,000 |
| Maximum marital deduction (pre-ERTA) | (500,000) | (400,000) | (300,000) |
| Taxable estate | 500,000 | 400,000 | 300,000 |
| Tentative tax | 155,800 | 121,800 | 87,800 |
| Unified credit | 121,800 | 121,800 | 121,800 |
| Estate tax due | 34,000 | --- | --- |
| Unused credit | --- | --- | 34,000 |

In the first two examples, the taxable estate is large enough to fully absorb the unified credit and, thus, there is no need to decrease the marital deduction in order to increase the taxable estate. In the third example, although no estate tax is due, the taxable estate is not large

the provision following the maximum marital deduction formula clause was not intended to reduce or eliminate estate taxes.[4]

Although not mentioned by the majority, both this Court and other courts have recognized critical distinctions between the formulas in *Estate of Neisen* and *Estate of Bruning* on the one hand, and the formula in *Estate of Blair* that is identical to the formula in this case. In *Estate of Christmas v. Commissioner, supra,* which involved a maximum marital deduction formula similar to the one in this case, we found that ERTA section 403(e)(3) precluded an unlimited marital deduction. After distinguishing *Estate of Neisen,* we indicated our agreement with *Estate of Blair* stating:

> The conclusion we reach in this case is consistent with two recently decided cases. *Estate of Blair v. Commissioner,* T.C. Memo. 1988-296, and *Estate of Bauersfeld v. Commissioner,* T.C. Memo. 1988-224. The facts in this case are in substance the same as the facts in *Estate of Blair.* [91 T.C. at 777 n. 9.]

In *Liberty National Bank & Trust Co. v. United States, supra,* the Court of Appeals found that the transitional rule contained in section 403(e)(3) applied to restrict the amount of the marital deduction to that which would have been allowable prior to December 31, 1981. In doing so, the Court of Appeals distinguished *Estate of Neisen* and *Estate of Bruning* because the formulas in both of those cases involved express language stating that the testators intended to eliminate all Federal estate taxes. *Liberty National Bank & Trust Co. v. United States, supra* at 304. The court also stated:

> Here there is no specific language in decedent's will that he intended the marital bequest to change if federal tax law changed. The clause in the will which states that he intended to bequest a share "equal to the maximum marital deduction allowable" is precisely the type of provision

---

enough to fully absorb the unified credit. In this situation, the provision following the maximum marital deduction formula clause provides for the taxable estate to be increased in order to use the entire unified credit. To accomplish this, the amount going into Trust A that qualifies for the marital deduction is reduced by $100,000, which increases the taxable estate to $400,000.

[4]The provision for reducing the maximum marital deduction formula amount cannot serve to reduce or eliminate decedent's estate tax whether one uses the current unlimited marital deduction or the pre-ERTA limited amount. In either event, the reduction provision does not come into play unless there would otherwise be unused credits.

addressed in ERTA. *Estate of Christmas v. Commissioner,* 91 T.C. No. 49 (Oct. 6, 1988); *Estate of Bauersfeld v. Commissioner,* 55 T.C.M. (CCH) 891 (1988); *Estate of Blair v. Commissioner,* 55 T.C.M. (CCH) 1246 (1988). All three of these cases had language in wills or testamentary trusts nearly identical to the language in decedent's will. In each of these cases, the court held that the clause was a formula clause, and that the transitional rule therefore applied to limit the marital deduction. [*Liberty National Bank & Trust Co. v. United States,* 867 F.2d at 304.]

This same distinction was relied on by the Tenth Circuit Court of Appeals in *Estate of Bruning* when it found that section 403(e)(3) did not apply to prevent an unlimited marital deduction. After discussing the specific language in the Bruning formula, which the court found to be closely analogous to that contained in *Estate of Neisen,* the court stated:

> Other cases finding a formula marital deduction clause within the contemplation of section 403(e)(3) are distinguishable from this case. In each, the wills contained a standard marital deduction formula clause specifically indicating that the decedent's intent was that the spousal bequest be dependent upon the maximum marital deduction. See *Liberty Nat'l Bank & Trust Co. v. United States,* 867 F.2d 302; *Estate of Christmas v. Commissioner,* 91 T.C. 769 (1988); *Estate of Bauersfeld v. Commissioner,* 55 T.C.M. (CCH) 891 (1988); *Estate of Blair v. Commissioner,* 55 T.C.M. (CCH) 1246 (1988). [*Estate of Bruning v. Commissioner,* 888 F.2d at 660.]

Because the purpose of section 403(e)(3) was to prevent an unintended increase in the amount passing to the surviving spouse, the majority attempts to show that decedent's sole intent was to benefit his wife. The majority states:

> Nothing in the revocable trust agreement before us could lead a reasonable person to believe that the decedent's primary concern was to limit the amount going to his surviving wife to protect the interests of his other heirs. On the contrary, the decedent's trust *only* shows concern for the welfare of the person who was his wife of 44 years when the amended trust agreement was signed in 1978. * * * [Majority op. at 301. Emphasis in original.]

I must respectfully disagree. The trust instrument indicates that decedent was concerned about *both* his wife and his children. If his "only" concern was for his wife, the trust corpus would not have been divided into Trust A and Trust B. The purpose and effect of Trust B was to place *limits* on the spouse's dominion and control over its

principal. These limits were not in Trust A. The only beneficiaries of these limitations were decedent's sons.[5]

The majority also finds that the trust gave the spouse "unlimited access to all of the income and principal of Trust A *and* Trust B after the decedent's death, provided only that the principal of Trust A must be used up before the principal of Trust B can be invaded." (Majority op. at 301. Emphasis in original.) If this were true, the nature of the property interests passing to the spouse under both Trust A and Trust B would be the same, making the distinctions between the two trusts meaningless.[6] Certainly, that is not what the decedent intended. Trust A and Trust B both entitled the spouse to income for life and both allowed for the possible distribution of principal to the spouse. All of the principal of Trust A was available for distribution to the spouse "as Spouse may direct from time to time." Trust B principal, however, could only be invaded after the exhaustion of the principal in Trust A and then only for the *"reasonable* care, support and maintenance" of the spouse. (Emphasis added.) This type of limitation is subject to an ascertainable standard and there is a fiduciary obligation to protect the interests of decedent's children who were the ultimate distributees of Trust B. See *Estate of Little v. Commissioner,* 87 T.C. 599 (1986); *Estate of Sowell v. Commissioner,* 74 T.C. 1001 (1980), revd. on other grounds 708 F.2d 1564 (10th Cir. 1983). Compare *Finlay v. United States,* 752 F.2d 246 (6th Cir. 1985), with *Peoples Trust Co. of Bergen County v. United States,* 412 F.2d 1156 (3d Cir. 1969).[7]

A distinction of even greater importance between Trust A and Trust B is that paragraph 2 of Trust A gives the spouse the "absolute power" to appoint any part of the

[5]The restrictions in Trust B may also have been intended to preclude the possibility that Trust B might be includable in the spouse's taxable estate. However, this is not inconsistent with decedent's intent to benefit his children. The beneficiaries of such tax savings would be decedent's children who were the ultimate beneficiaries of Trust B.

[6]If the decedent's spouse had "unlimited access" to the principal and income of both Trust A *and* Trust B, as the majority finds, that finding would distinguish the facts in this case from those contained in our opinion in *Estate of Blair,* making the disapproval of *Estate of Blair* dicta.

[7]The majority seems to suggest that because the surviving spouse was also the trustee, her powers would be unrestrained. (Majority op. at 301.) However, we have frequently refused to assume that a trustee will fail to act in accordance with his or her fiduciary responsibilities. See *Estate of Graves v. Commissioner,* 92 T.C. 1294, 1302-1303 (1989).

principal to herself or any other person. There were no limiting standards for exercise of this absolute power. By contrast, no similar rights were given to the spouse under the provisions of Trust B which could be used to defeat the rights of decedent's sons.[8]

Finally, the majority speculates that "It seems highly unlikely, if not inconceivable," that decedent would have foregone additional tax savings to protect the dispositive scheme in Trust B. (Majority op. at 301.) I find no factual basis for this. Decedent had made detailed provisions for the disposition of his estate. He had obviously been advised on estate tax issues at one time. He did not change the provisions in the trust during the 4 years of his life subsequent to the enactment of ERTA or during the 3 years after the California legislature determined that pre-ERTA limits would apply in construing maximum marital deduction formulas. We know nothing of the specific needs and circumstances of decedent's heirs. In any event, we are not free to wander outside the confines of the trust instrument in an attempt to determine what the decedent would have intended where the language falls squarely within a set of criteria established by Congress. We should not vary or change the result prescribed by Congress based on after-the-fact arguments as to what the decedent would have intended if he had considered the issue. *Estate of Christmas v. Commissioner,* 91 T.C. at 776.

PARKER, JACOBS, and GERBER, *JJ.,* agree with this dissent.

---

[8]Decedent clearly intended that the property interests in Trust A would qualify for the marital deduction and that the property interests in Trust B would not. If the majority is correct, that decedent's spouse had the same "unlimited access" to principal and income of both Trust A *and* Trust B, it would seem to follow that upon her death, the fair market value of Trust B would be includable in her taxable estate pursuant to sec. 2041. That is a result that would probably be contrary to decedent's intentions. (See *supra* note 5.)