ESTATE OF PAULINE CHRISTMAS, DECEASED, ACE CHRISTMAS, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12926-86.     Filed October 6, 1988.

*Paul A. Kastler,* for the petitioner.
*Frederick J. Lockhart, Jr.,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Pauline Christmas in the amount of $109,336.98. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision whether the provisions of section 403(e)(3), Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 305 (ERTA or the act), prohibit the estate from qualifying under section 2056[1] for an unlimited marital deduction.[2]

All of the facts have been stipulated and are found accordingly.

Petitioner is the Estate of Pauline Christmas (decedent). Decedent died testate on October 5, 1982, as a result of injuries she received in an automobile accident. She was survived by her husband, Ace Christmas, and their four children. Decedent's husband, Ace Christmas, is the personal representative of her estate. Decedent and her husband were residents of Raton, New Mexico, at the time of decedent's death. Decedent's husband was a resident of New Mexico at the time the petition in this case was filed. New Mexico is a community property State.

Decedent and her husband owned, as community property at the time of her death, several assets, including 2,904 of 4,999 outstanding shares of stock in Christmas Ranches, Inc. (the corporation).[3] The remaining shares had been

---

[1]Unless otherwise stated, all references are to the Internal Revenue Code of 1954 as amended and in effect at the time of decedent's death, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner also claims attorney's fees with respect to the settled issues. However, this issue is not properly before us at this time. See Rule 231(a).

[3]The parties have stipulated that the initial stock issuance of Christmas Ranches, Inc., was 4,499 shares and all these shares are still outstanding. However, since both parties have based their calculations on a total outstanding shares figure of 4,999, the Court assumes that 500 additional shares were subsequently issued or that the figure contained in the stipulation is incorrect.

transferred by the couple to their children over a period beginning in November of 1968 and ending in January of 1976. The corporation owned two tracts of land on which decedent and her husband had operated a family ranch for a period in excess of 27 years. Decedent's husband continues to operate the ranch as a family business.

According to decedent's Federal estate tax return, the two tracts of land on which the ranches were operated had a total fair market value of $1,403,374 on the date of her death. However, respondent has conceded that the land is entitled to special use valuation under section 2032A. The total special use value of both ranches held by the corporation at the date of decedent's death was approximately $561,682.

The corporation's sole liability was a debt of $52,457 owed to decedent and her husband. The total net worth of the corporation at the time of decedent's death (taking into account the two ranches at their special use values, the proceeds of an insurance policy on the life of decedent, several miscellaneous assets, and the corporation's sole liability) was $726,295. Therefore, the value, for estate tax purposes, of decedent's community one-half interest in the 2,904 shares of Christmas Ranches, Inc., was $210,958.

Decedent's other assets, at the time of her death, consisted of her community property interest in shares of stock in several corporations (other than Christmas Ranches, Inc.), three tracts of land (other than those held by Christmas Ranches, Inc.), and cash and notes in the amount of $70,293.[4] Decedent's total gross estate which consisted entirely of her interest in community property was valued at $318,294.

Decedent executed her will on March 7, 1977, and did not alter, amend, or revoke that will prior to her death on October 5, 1982. Clause 4 of the will provides as follows:

I give, and devise to my husband, ACE CHRISTMAS, that portion of my separate property, if any, and to the extent of such separate property, and if none, to the extent necessary, of my community property which, including all property which passes to my said spouse by joint tenancy and under this Will, and considering the deductions for expenses,

---

[4]Decedent's half of the $52,457 debt owed to her and her husband by Christmas Ranches, Inc., is included in this amount.

debts and losses, is equal to the maximum marital deduction of the Internal Revenue Code less my dispositive share of community property. Such property so devised is to be specified by my said spouse, or if not, to be determined by my Personal Representative from all my property, first considering that which passes outside of the Will by joint tenancy; provided, that upon renunciation or disclaimer by my said spouse, this devise or the renounced or disclaimed portion, shall pass to the residue clause hereinafter set forth.

Clause 5, the residuary clause of decedent's will, provides that the remainder of her estate will pass to her husband, Ace Christmas, as trustee to hold for the benefit of certain named beneficiaries, her husband being the income beneficiary for life, with the principal and undistributed accumulated income passing to her children at his death. The will also provides that the trustee will have the power to distribute up to 10 percent of the principal per year to meet the emergency needs of any of the named beneficiaries.

On June 27, 1983, decedent's husband executed two disclaimers. Under the first disclaimer, he renounced his interest in decedent's property passing under clause 4 of her will, except for the $70,293 in cash and notes. Under the second disclaimer, he renounced all right, title, claim, or interest as devisee, trustee, or trust beneficiary, under clause 5 of decedent's will, to certain specifically enumerated properties, including 417 shares of the stock of Christmas Ranches, Inc.

A marital deduction in the amount of $70,293 was claimed on decedent's Federal estate tax return for the cash and notes that decedent's husband did not disclaim. In his notice of deficiency, respondent determined that the estate was not entitled to any marital deduction.

Respondent takes the position that clause 4 of decedent's will contains a maximum marital deduction formula within the meaning of section 403(e)(3) of ERTA and, therefore, the unlimited marital deduction under section 2056 (as that section applies to the estates of decedents dying after December 31, 1981) is not applicable to decedent's estate.

According to respondent, section 2056(c), as in effect prior to its amendment by ERTA, determines the marital deduction available to decedent's estate. Under that section, the marital deduction is initially limited to the greater of $250,000 or one-half of the value of the adjusted gross

estate. Section 2056(c)(1)(A) as in effect prior to its repeal by ERTA. However, in the case of community property, reductions are required for such community property under sections 2056(c)(1)(C) and 2056(c)(2)(B)(i), as in effect prior to repeal by ERTA. Since decedent's entire estate consisted of community property, respondent determined that the marital deduction to which the estate is entitled under section 2056(c) prior to its repeal by ERTA is zero. Petitioner does not question this computation.

Petitioner contends that clause 4 of decedent's will is not a maximum marital deduction formula within the meaning of section 403(e)(3) of ERTA and, therefore, the estate should be allowed the unlimited marital deduction available under the law effective on October 5, 1982, the date of decedent's death. Petitioner argues that to agree with respondent that the deduction available to the estate is to be determined under section 2056(c), as in effect prior to its repeal by ERTA, would effectively frustrate the intent of decedent in forming her estate plan and the intent of Congress in enacting the unlimited marital deduction.

In 1981 section 2056(c), which limited the marital deduction otherwise available under section 2056(a), was repealed by section 403(a)(1)(A) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 301, effective for decedents dying after December 31, 1981. The express intent of Congress in repealing section 2056(c) and providing for the present unlimited marital deduction was to treat the husband and wife as one economic unit and to allow unlimited tax-free transfers within such unit. S. Rept. 97-144 (1981), 1981-2 C.B. 412, 461.

By enacting an unlimited marital deduction, Congress intended to permit only one incidence of estate tax per generation. However, Congress was also aware that many existing wills contained formula clauses under which the amount of property passing to a decedent's surviving spouse was entirely dependent on the amount of the marital deduction available to decedent's estate. S. Rept. 97-144, *supra*, 1981-2 C.B. at 462. Thus, a will that contained a maximum marital deduction formula (which was executed with the greater of $250,000 or 50 percent of adjusted gross estate limitation of section 2056(c) prior to its repeal in

mind) might well pass more property to a surviving spouse under the new unlimited marital deduction than the testator had intended.

In order to prevent this possible distortion of testator intent, Congress provided a transitional rule in section 403(e)(3) of ERTA applicable to wills executed before the date which is 30 days after the date of enactment of the act.[5] Section 403(e)(3) of ERTA provides that:

If—

(A) the decedent dies after December 31, 1981,

(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,

(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and

(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a),

then the amendment made by subsection (a) shall not apply to the estate of such decedent.

Neither party contends that the conditions set out in subparagraphs (A), (C), and (D) of section 403(e)(3) of ERTA have not been met. The facts show that they have. Decedent's will was executed on March 7, 1977, long before the enactment of ERTA, the will was not amended to specifically refer to the unlimited marital deduction at any time after its execution, and New Mexico has not enacted a statute , construing existing maximum marital deduction formula clauses as referring to the unlimited marital deduction. However, the parties disagree as to whether the language contained in clause 4 of decedent's will is ''a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital

---

[5]ERTA was enacted on Aug. 13, 1981, and 30 days thereafter is Sept. 12, 1981. Decedent's will was executed on Mar. 7, 1977, and, therefore, falls within the time frame addressed by sec. 403(e)(3) of the act.

deduction allowable by Federal law" within the meaning of section 403(e)(3)(B) of the act.

In our view, clause 4 is precisely the type of provision that the transitional rule of ERTA was intended to encompass and, therefore, respondent's position in this case is correct. The clause expressly provides that decedent's husband is to receive the maximum amount of property which qualifies for the Federal estate tax marital deduction. Thus, clause 4 of the will, which presumably was drafted with full knowledge of the "greater of $250,000 or 50% of adjusted gross estate" limitation then in effect, might well pass more property to decedent's husband under the new unlimited marital deduction than decedent had intended. This possible perversion of testator intent is exactly what Congress hoped to prevent by providing the transitional rule of section 403(e)(3).[6]

Nevertheless, petitioner contends that, under the law of New Mexico, decedent's will is ambiguous since her testamentary intent cannot be definitely determined from the four corners of the instrument. On this basis, petitioner concludes, we should disregard the document's express language (which places it clearly within the transitional rule) and, instead, piece together, from extrinsic evidence, an overriding intent on the part of decedent to minimize Federal estate taxes.[7]

---

[6]Under the law in effect at the time decedent's will was executed, Mar. 7, 1977, the provisions of clause 4 of her will might pass no property to her husband if all her property at the date of her death was community property. Unless decedent was contemplating leaving separate property at the date of her death, under the wording of clause 4, it could be concluded that no bequest to her spouse was intended.

[7]Petitioner points to a "decades-long" series of stock transfers to the couple's children as showing an overriding intent on the part of decedent to minimize the estate taxes that would be due upon her death. In our view, this evidence does not support a conclusion that decedent would pass full control of all her property to her husband, if doing so would save Federal estate taxes, even though such a disposition could (if no disclaimers were filed) result in a virtually complete disinheritance of her children. The couple's inter vivos gifts of stock to their children evidence an intent to accomplish many things only one of which might be a reduction of Federal estate taxes. The couple may have wanted to teach fiscal responsibility to their children or may simply have wanted to provide for their children's well being (an intent which presumably still existed at the time decedent formed her estate plan). This latter objective in transferring the stock appears to defeat an argument that decedent's sole concern when executing her will was the reduction of taxes. Even if we were to examine decedent's testamentary intent in determining the applicability of sec. 403(e)(3) of ERTA, petitioner's argument pertaining to the decedent's intent is simply not supported by the evidence. In our view it is much more likely that decedent intended to bequeath to her husband an amount resulting in a maximum marital deduction under the law as it existed at the time the will was executed.

We are not free to wander outside the confines of a testamentary instrument to determine, under State law, the intent of a decedent where the language contained in that instrument causes it to fall squarely within a set of criteria established by Congress. Accord *Lyeth v. Hoey,* 305 U.S. 188, 194 (1938); *Burnet v. Harmel,* 287 U.S. 103, 110 (1932). Here, any ambiguity in decedent's will instrument was caused by changes in the available marital deduction and not, as petitioner seems to suggest, from the language of the will, itself.

Congress, in enacting the unlimited marital deduction, recognized that this change in Federal estate tax law could create ambiguities in existing wills (such as decedent's) which expressly referenced and depended on the then-existing marital deduction. It provided a method for resolving such ambiguities in section 403(e)(3) of ERTA. Once the criteria set out in this transitional rule have been met, we should not vary or change the result prescribed by Congress based on an after-the-fact State law argument as to what decedent may or may not have intended.[8] *Burnet v. Harmel* and *Lyeth v. Hoey, supra.*

In *Estate of Neisen v. Commissioner,* 89 T.C. 939 (1987), this Court did discuss the intent of the testator there involved. However, such intent was gleaned solely from the language of the will, itself. More importantly, the discussion followed, and simply was a reiteration of the initial conclusion in that case (which was based solely on the language of the will) that the clause there involved was not a maximum marital deduction formula clause within the meaning of the ERTA transitional rule. *Estate of Neisen v. Commissioner,* 89 T.C. at 942. The formula clause in *Estate of Neisen* expressly provided that the surviving spouse was to receive the lesser of the amount which was equal to the maximum marital deduction or the minimum amount of property necessary to ensure that decedent's estate paid the least amount of Federal estate tax.

---

[8]We note, at this juncture, that if Congress had not repealed sec. 2056(c), clause 4 of decedent's will would unquestionably be governed by this exact provision. Thus, petitioner's strenuous arguments that decedent could never have logically intended for the disposition of her community property to be governed by sec. 2056(c) as in effect prior to its repeal by ERTA are not well taken.

This Court, basing its decision on the testamentary language contained within the four corners of the will, rather than on extrinsic evidence, concluded that the testator in *Estate of Neisen* never intended for his spousal bequest to be entirely dependent upon the maximum available marital deduction which, at the time his will was executed, was the greater of $250,000 or 50 percent of adjusted gross estate. *Estate of Neisen v. Commissioner, supra* at 942. Therefore, the clause was not a maximum marital deduction formula clause within the meaning of section 403(e)(3) of ERTA.

In contrast, the language of decedent's will indicates that she did, indeed, intend that her spousal bequest be entirely dependent upon the maximum available marital deduction which, at the time her will was executed, was limited to the greater of $250,000 or one-half of her adjusted gross estate. Furthermore, decedent's will contains no indication that, in basing her spousal bequest on the marital deduction, she wanted changes in the available deduction to govern the testamentary disposition of her property. In this case, we conclude that clause 4 is a maximum marital deduction formula clause, governed by section 403(e)(3) of ERTA, and, therefore, extrinsic evidence of the decedent's intent is not relevant.[9]

Finally, petitioner contends that, if the ERTA transitional rule is applied to this estate, effectively limiting its deduction for spousal bequests to zero, the intent of Congress in enacting an unlimited marital deduction would be frustrated. Petitioner's contention confuses the intent of Congress in enacting the unlimited marital deduction with the intent of Congress in enacting the section 403(e)(3) transitional rule. In enacting the unlimited marital deduction Congress intended to provide most estates with an opportunity to reduce or eliminate estate tax through spousal bequests. However, Congress in the transitional rule of section 403(e)(3) of ERTA intended to exclude from the unlimited marital deduction those estates to which application of this unlimited marital deduction might distort

---

[9]The conclusion we reach in this case is consistent with two recently decided cases. *Estate of Blair v. Commissioner,* T.C. Memo. 1988-296, and *Estate of Bauersfeld v. Commissioner,* T.C. Memo. 1988-224. The facts in this case are in substance the same as the facts in *Estate of Blair.*

testamentary intent. Clause 4 of the Pauline Christmas will places her estate within this category to which section 403(e)(3) of ERTA applies. Application of the transitional rule and denial of the unlimited marital deduction is, therefore, consistent with, and does not frustrate, congressional intent.

Because we have concluded that the marital deduction provision in decedent's will is a marital deduction formula to which section 403(e)(3) of ERTA applies, the marital deduction available to decedent's estate is determined under section 2056(c), as in effect prior to the repeal by ERTA.

Because of issues disposed of by the parties,

*Decision will be entered under Rule 155.*