**ESTATE OF Robert F. KLEIN,
Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.**

**No. 91–1073.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 13, 1991.

Decided Oct. 17, 1991.

Harold Stern (argued and briefed), Southfield, Mich., for petitioner-appellant.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Office of Chief Counsel; Gary R. Allen, Acting Chief (briefed), Richard Farber, and Elizabeth K. Wickstrom (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellee.

Before MERRITT, Chief Judge, GUY, and SILER,* Circuit Judges.

MERRITT, Chief Judge.

This case presents the issue whether the taxpayer's entire estate is eligible for the unlimited marital deduction under § 2056 of the tax code, as the Estate of Robert Klein ("Estate") argued, or whether only a portion of the estate is eligible for the unlimited marital deduction because only a portion of the estate passed to the decedent's spouse, Gladys Klein, as the IRS argued. The Estate took the full marital deduction. At its simplest the question is (1) whether Robert Klein intended his entire estate to go to Gladys Klein and disposed of the estate through the marital and family trust vehicles only because the tax consequences of a straightforward disposition to her would have been too disadvantageous or (2) whether he intended to give a portion of his estate to Gladys Klein and have another portion of it go to the family trust to be distributed equally among the Kleins' children after both Robert and Gladys Klein died. The Tax Court sustained the IRS determination of a $372,435 deficiency in the Estate's tax. For the reasons set out below, we affirm the judgment of the Tax Court.

\* \* \* \* \* \*

Robert Klein died on June 30, 1984, survived by his spouse, Gladys Klein, and four adult children. Gladys Klein is the Personal Representative of the Estate. In February 1980 Robert Klein entered into a Trust agreement which created a trust to hold and manage his estate and, on his death, to fund a marital trust and a family trust. The Trust Agreement provided two alternatives for allocating funds to the marital trust. The first provided for approximate equalization of Gladys and Robert Klein's estates. The second tracked the then-current law on marital deductions in allowing a deduction of the greater of 50% of the adjusted gross estate or $250,000. The trustees were to fund the family trust with the residue of the Trust assets.[1] At

---

\* Honorable Eugene E. Siler, Jr., Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation, became a Circuit Judge on September 16, 1991.

1. The funding provisions of the marital trust and the family trust are set out below:

[T]here shall be allocated to the Marital Trust that interest in the balance of Settlor's Adjusted Gross Estate which, when taken together with all other interests and property that qualify for the Marital Deduction and that pass or shall have passed to Settlor's wife otherwise than by the terms of this Paragraph, shall be needed to obtain the Optimum Marital Deduction allowable in determining the Federal Estate Tax upon Settlor's Adjusted Gross Estate as defined herein. The Optimum Marital Deduction shall be that amount which when combined with the estate owned by Settlor's spouse, will result in approximate equalization of the estates of the Settlor and Settlor's spouse and occasion the lowest possible Federal Estate Taxes in both of said estates. The Optimum Marital Deduction shall be the greater of Fifty Percent (50%) of Settlor's Adjusted Gross Estate or Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) in any case where, in the opinion of the Trustees, the application of the foregoing equalization principle would in effect, produce a substantially identical result or the Trustees are prevented from utilizing it by any rule of law, court decision, or transcendent consideration....

[T]here shall be allocated to the Family Trust the remaining interest in the balance of the assets constituting the residue of the trust estate and with respect to which the Marital

Gladys Klein's death, the corpus of the marital trust was to pass under the terms of her will. On her death the corpus of the family trust was to be distributed equally among the Kleins' four adult children.

After Robert Klein entered into the Trust, the limitation on the marital deduction was repealed by section 403(a)(1)(A) of the Economic Recovery Tax Act of 1981 (ERTA), thus allowing an unlimited marital deduction. Congress enacted a "transitional rule" to apply to wills executed prior to the enactment of ERTA. The transitional rule made such wills subject to prior law on marital deductions if certain conditions were met, among them that the testator had not amended the will after the change in the tax law and the testator included a formula marital deduction clause. See *id.* at § 403(e)(3). Robert Klein did not amend the Trust document.

The IRS conceded, and the parties appear to agree, that the terms under which the marital trust was to be funded did not include a formula marital deduction clause and that the transitional rule did not apply to limit the marital deduction. The IRS argued, however, that the marital deduction was limited by the amount of the disposition to Gladys Klein, either under the marital trust or under state law. The IRS read the marital trust language to limit the amount of the disposition to Gladys Klein under the marital trust to 50 percent but acknowledged that, in fact, by operation of state law and the terms of other instruments outside the Trust Agreement, Gladys Klein received $1,773,245 which is subject to the marital deduction, an amount greater than either of the funding alternatives would have allocated to the marital

trust. Thus, according to the IRS, the marital trust was not to be funded at all, and the Estate could claim as a marital deduction that amount that Gladys received outside the Trust Agreement. The Estate could not claim as part of the marital deduction the residue, which the IRS argued must be used to fund the family trust under the terms of the Trust Agreement. The IRS and the Tax Court found the funding provisions of the Trust unambiguous in limiting the funding of the marital trust and providing for funding for the family trust. Further, the Tax Court found nothing in the terms of the instrument that suggested the amount of funding for the marital trust should vary with changes in the tax law. The IRS and the Tax Court pointed out that to give the whole estate to Gladys Klein rather than fund the family trust would be a quite different disposition than the express disposition. Neither the Tax Court nor the IRS found any reason to look beyond the terms describing the funding for the two trusts in order to find the intent of the testator.

■ We do not agree with the Estate's argument that the only source of limitation on the Estate's ability to claim the unlimited marital deduction is the transitional rule, for the settlor's intent as demonstrated in the entire Trust Agreement is also important. We also reject the IRS' argument that we need not look to the entire Trust but may look only to the funding provisions of the marital trust to determine whether the Estate may claim the unlimited marital deduction. Because the Estate and the IRS agree that the transitional rule does not apply to foreclose the application of the unlimited marital deduction,[2] we

Deduction would not be allowed if it were allocated to the Marital Trust.

**2.** The IRS and the Estate cited several transitional rule cases:

*Estate of Bruning v. Commissioner,* 54 T.C.M. (CCH) 1469 (1988), *aff'd,* 888 F.2d 657, 659 (10th Cir.1989) (allowing an unlimited marital deduction despite disposition to a family trust and a marital trust because decedents intent was "to minimize the estate taxes rather than to limit the marital deduction to the amount that was the maximum"). *Liberty National Bank & Trust*

*Co. v. United States,* 867 F.2d 302, 304 (6th Cir.1989) (holding that transitional rule applied to limit the marital deduction because there was "no specific language in decedent's will that he intended the marital bequest to change it federal tax law changed"); *Estate of Neisen v. Commissioner,* 89 T.C. 939 (1987), *aff'd,* 865 F.2d 162 (8th Cir.1988) (affirming Tax Court decision that Estate could claim unlimited marital deduction because decedent's will provided that his spouse was "to receive the minimum amount necessary to ensure that decedent's estate pays the least amount of federal estate tax").

must look to the language in the Trust in totality to determine the testamentary intent of Robert Klein at the time he entered into the Trust Agreement. *See In re Estate of Butterfield*, 405 Mich. 702, 275 N.W.2d 262, 266 (1979).

■ The Trust Agreement seems to be at least partially a tax document. The instruction setting out the marital trust funding allocation under an equalization principle expressed the intent to "occasion the lowest possible Federal Estate Taxes in both of said estates." The entire plan for giving about half the estate to Robert Klein's spouse is predicated on the then-current tax law. The second allocation provision used the language of the pre-ERTA statute imposing a limit on marital deductions. Disposition plans such as this one, corresponding to the tax law, were common before Congress repealed the limitation on the marital deduction. *See, e.g., Estate of Bruning v. Commissioner*, 54 T.C.M. (CCH) 1469 (1988), *aff'd*, 888 F.2d 657 (10th Cir.1989). The complexity of the Trust Agreement reinforces the view that it is in part a tax document. If Robert Klein had meant only to execute a testatmentary document that would give about half of his estate to Gladys Klein and the rest, ultimately, to the adult children, he could have accomplished that goal with much less complex language.

The Estate argued that the terms of the family trust, delaying final disposition to the adult children until after Gladys Klein died, and giving Gladys Klein great control over the family trust, illustrate that Robert Klein effectively disposed of his estate to Gladys Klein, hampered only by the tax disadvantage of giving her the estate more directly. It is true that Gladys Klein could remove any trustee as she wished. Nevertheless, the trustee was given great discretion to act without Gladys Klein's authority and was bound by specific limits when re-

moving money from the principal of the trust. The terms of the family trust allowed the trustee to use the principal of the trust on Gladys Klein's behalf only to the extent of $5,000 or five percent per year. The trustee, at the trustee's sole discretion, could invade the corpus of the trust to an unlimited extent only if other income available to Gladys Klein was "insufficient for her support and maintenance." Thus the family trust seems more than a vehicle to give assets to Gladys Klein.

The Trust Agreement provides expressly and specifically for the children. The corpus of the family trust will go to the children, no matter the terms of Gladys Klein's will. The trustee may distribute income from the family trust to the children as well as to Gladys Klein. The trustee also is empowered to distribute limited amounts from the corpus of the trust for the children's benefit. In addition, the trustee is allowed to withdraw whatever amount the trustee deems necessary from the corpus of the family trust to establish the children in business, to help them buy homes, or to accomplish any other purpose the trustee believes in the best interest of the children. The family trust also has a provision for an orphan's exclusion if any of the children is eligible but only to the extent necessary to reduce the Estate tax to zero.

To find that the Estate may claim the unlimited marital deduction, we would have to find that Robert Klein intended to leave his entire estate to Gladys Klein even at the expense of leaving nothing to the adult children. Given the express provisions in the Trust Agreement that provide for some disposition directly to the children, we cannot say that Robert Klein intended to give his entire estate to Gladys Klein, that he would have given the entire estate to her directly but for unfavorable tax consequences at the time of entering into the Trust Agreement. We conclude therefore that Robert Klein's intent was to provide

These cases are not applicable because they were decided entirely as transitional rule cases. The Estate relies on *Bruning* and *Neisen* for its view that if the transitional rule does not apply, the Estate automatically may claim the unlimited marital deduction. The *Bruning* and *Neisen*

courts found, however, that the testamentary documents illustrated the testator's intent to dispose of his estate in such a way as to pay the last possible tax. In those cases as in others, the testator's intent controls the outcome. *See Estate of Bruning*, 888 F.2d at 659.

for the Kleins' children, the result reached by the Tax Court.

We therefore affirm the judgment of the Tax Court sustaining the IRS deficiency determination.