ESTATE OF EVELYN WALKER PIDGEON, DECEASED, FIRST TENNESSEE BANK, NATIONAL ASSOCIATION, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Walker Pidgeon v. Commissioner
Docket No. 10961-93
United States Tax Court
T.C. Memo 1995-218; 1995 Tax Ct. Memo LEXIS 220; 69 T.C.M. (CCH) 2638; May 18, 1995, Filed *220 Decision will be entered for respondent. For petitioner: Allan J. Wade
For respondent: Edsel Ford Holman, Jr.
TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 118,392.49. The sole issue for decision concerns the correct amount to be included in petitioner's estate tax return pursuant to section 2044, [1] which turns on the proper interpretation of the marital trust provision in the will of Evelyn Walker Pidgeon's spouse. The facts have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is the estate of Evelyn Walker Pidgeon (Mrs. Pidgeon) who died testate on October 8, 1989, a resident of Memphis, Tennessee. First Tennessee Bank, National Association, is the duly qualified *221 and acting executor for her estate, and its legal address is Memphis, Tennessee. Mrs. Pidgeon was married to James Pidgeon (Mr. Pidgeon), at the time of his death on July 30, 1989. Mr. Pidgeon was also a resident of Memphis, Tennessee, at the time of his death. Mr. Pidgeon's last will and testament (Mr. Pidgeon's will) was executed on June 21, 1988. Mrs. Pidgeon received outright assets including personal property, life insurance proceeds, and assets jointly owned or payable-at-death in an aggregate amount of $ 260,777. In addition, under item V of Mr. Pidgeon's will, a trust was established for the benefit of Mrs. Pidgeon. Item V provides in pertinent part as follows: If my wife survives me, I give, devise and bequeath one-half of my adjusted gross estate as finally determined for Federal estate tax purposes to the First Tennessee Bank, N.A., Memphis, as Trustee, after taking into account all items of property, real and personal, required to be included in the computation of Federal estate taxes (whether such property shall pass under this will or otherwise). * * * Item V further provided that the entire income of the trust was payable to Mrs. Pidgeon for life with a power *222 in the trustee to invade for her benefit, that she had a general power of appointment, and that, upon her death and her failure to exercise the power of appointment, the principal of the trust was to become part of the residuary estate. Item VI of the will provided for a trust of the residue with the income payable to Mrs. Pidgeon for life and set forth detailed provisions for the disposition of income and principal after her death. Prior to the filing of Mr. Pidgeon's estate, the executor of Mrs. Pidgeon's estate, on April 30, 1990, disclaimed the power of appointment under item V, thereby disqualifying the trust for the marital deduction under section 2056(b)(5). The eligibility of the item V trust for the marital deduction under section 2056(b)(7) was reinstated by the QTIP election contained in Mr. Pidgeon's estate tax return. Using the alternate valuation date, Mr. Pidgeon's estate tax return reported a gross estate of $ 1,674,336, an adjusted gross estate of $ 1,610,770, and a taxable estate of $ 805,385. It treated the item V trust as a qualified terminable interest property trust (QTIP trust) under section 2056(b)(7), and claimed a marital deduction for the value of the *223 trust property. The estate computed that value as $ 544,608, representing one-half of the adjusted gross estate ($ 805,385) minus the value of the above-mentioned items received outright by Mrs. Pidgeon, totaling $ 260,777, for which it separately claimed a marital deduction. Using date of death values, Mrs. Pidgeon's estate tax return reported a gross estate of $ 3,335,960, an adjusted gross estate of $ 3,249,993, and a taxable estate of $ 3,236,752. Included in the gross amount was $ 260,777 representing the property received outright by Mrs. Pidgeon on Mr. Pidgeon's death pursuant to section 2033 and $ 544,608 representing the value of the QTIP trust pursuant to section 2044. There is no dispute between the parties with respect to the validity of the QTIP election, the qualification of the trust for a marital deduction by Mr. Pidgeon's gross estate, or the items reported by each estate as constituting the gross estate and adjusted gross estate (including the value of the components thereof other than the QTIP trust). The sole issue in dispute is the value of the item V trust, which turns upon the interpretation of the above-quoted provision of Mr. Pidgeon's will. [2]
*224 A determination of the value of the QTIP trust turns on the correct interpretation of item V, which is governed by State law. Helvering v. Stuart, 317 U.S. 154, 162 (1942); Estate of McMillan v. Commissioner, 76 T.C. 170, 173 (1981), affd. 670 F.2d 788, 789 n.2 (8th Cir. 1982). [3] Under Tennessee law, the intention of the testator, as expressed in the language of the will, controls unless it would contravene some rule of public policy. Estate of Robison v. Carter,701 S.W.2d 218, 220-221 (Tenn. Ct. App. 1985); see Estate of Richardson v. Commissioner, 89 T.C. 1193, 1202 (1987). If the language of the will is clear, we are instructed not to go outside that language. Davis v. Price, 226 S.W.2d 290, 292 (Tenn. 1949); American Natl. Bank & Trust Co. v. Auman, 746 S.W.2d 464, 467 (Tenn. Ct. App. 1987). *225 We note in passing that the reference to one-half of the testator's adjusted gross estate in item V is similar to the so called formula clause in use prior to the passage of the Economic Recovery Tax Act of 1981 (ERTA), which removed the section 2056(c) limitation on the marital deduction to the greater of $ 250,000 or 50 percent of the adjusted gross estate. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(e)(3), 95 Stat. 172, 305, reprinted in 1981-2 C.B. 256, 326; S. Rept. 97-144 (1981), 1981-2 C.B. 412, 462; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 379. However, since Mr. Pidgeon's will was executed in 1988, long after the passage of ERTA, this similarity represents nothing more than a reflection of possible inadvertence on the part of the draftsman.[4]
Petitioner argues that the language of item V, following "Trustee" requires *226 a subtraction of the amount ($ 260,777), which passed to Mrs. Pidgeon outside that provision, from one-half of the adjusted gross estate, in order to determine the amount passing under item V. Respondent counters that the language of item V does not require such a subtraction, and that the amount reflected in petitioner's estate tax return pursuant to section 2044 is therefore undervalued by $ 260,777. The principal element in petitioner's argument is that the phrase "adjusted gross estate" already "takes into account" the other property passing to Mrs. Pidgeon. Consequently, if item V is not construed to permit the subtraction of the value of such other property, the language following "Trustee" is redundant and contravenes a principle of testamentary construction under Tennessee law, that every word in a will is presumed to have some meaning. See, e.g., Daugherty v. Daugherty, 784 S.W.2d 650 (Tenn. 1990). Based upon this principle, petitioner maintains that the phrase "taking into account" should be construed to mean "less". In so doing, petitioner relies on Estate of Montgomery v. Commissioner, T.C. Memo. 1988-457, *227 and, in particular, on certain language therein. In Estate of Montgomery v. Commissioner, supra, we addressed the following provision: In the event that my beloved wife, * * *, survives me, I give, devise and bequeath outright to her, assets of my estate, whether in cash or in kind * * * equal to fifty percent (50%) of the value of my adjusted gross estate which term for this purpose shall mean gross estate reduced by the sum of the amounts allowable as a deduction under Section 2053 or 2054, I.R.C. as amended, as finally determined for Federal Estate Tax purposes, less the aggregate value of any property qualifying for the marital deduction which is allowed for Federal Estate Tax purposes by reason of interests in property, irrespective of whether probate or nonprobate, passing or which passed to my wife, otherwise than by the terms of this Article of my Will. * * * We concluded that this language required that property passing outside the provision be subtracted from the amount equaling 50 percent of the adjusted gross estate. [5]
*228 Petitioner argues that the provision in Estate of Montgomery is comparable to item V, although it does recognize that the above-quoted language refers to 50 percent of the adjusted gross estate less certain property, while item V refers to 50 percent of the adjusted gross estate after taking into account certain property. Petitioner seeks to neutralize this difference by pointing to the fact that in Estate of Montgomery we equated the language of the two expressions when we stated: As we interpret the will, the QTIP is a factor that must be taken into account in the computation of the 50-percent limitation established by Article III. Consequently, less of the decedent's other property passes to the wife outright. * * * [Estate of Montgomery v. Commissioner, T.C. Memo. 1988-457; emphasis added.] Aside from the fact that memorandum opinions do not have precedential value, [6] we think that Estate of Montgomery does not support petitioner. The language of the testamentary provision in that case was clear and the implementation of the word "less" required that the QTIP trust be "taken into account" by way of a subtraction. *229 It does not follow that the reverse is true namely that "taking into account", without more, should be construed to mean "less". In our opinion, the language merely defines the term "adjusted gross estate". See New Orleans Baptist Theological Seminary v. Lacy, 219 So.2d 665, 672 (Miss. 1969) (involving a substantially similar provision). Indeed, the draftsman of item V might well have considered it appropriate to define the term "adjusted gross estate", in view of the fact that the definition had been removed from section 2056(c) in 1981. [7] ERTA, supra. There is a further important difference stemming from the fact that the provision in Estate of Montgomery refers to "property * * * passing or which passed to my *230 wife, otherwise than by the terms of this Article". The significance of such language referring specifically to property passing to the spouse is reflected in the other authorities cited by petitioner which also refer to property passing to the spouse. See Estate of Klein v. Commissioner, 946 F.2d 1218 (6th Cir. 1991), affg. T.C. Memo. 1990-527 ("to Settlor's wife"); In re Estate of Inman, 196 N.Y.S.2d 369 (Sur. Ct. 1959) ("to my said wife"); Technical Advice Memorandum 8702005 (Sept. 26, 1986) ("to my wife").[8]
Petitioner argues that, although Mr. Pidgeon's will was executed in 1988 after the change wrought by ERTA, it was *231 drafted to resemble a pre-1981 formula bequest. Petitioner points to the use of the term "adjusted gross estate" as well as the form of the provision. The reason for using such a provision, petitioner contends, is that it would be favorable to split the combined estates evenly so as to produce estate taxes at the lowest possible tax rates. Petitioner's argument, however, fails to explain why Mr. Pidgeon would leave anything to Mrs. Pidgeon if she already had as much property as he. [9]
In Estate of Klein v. Commissioner, supra, by *232 contrast, the will contained a clear expression of the intent to equalize the two estates: There shall be allocated to the Marital Trust that interest in the balance of Settlor's Adjusted Gross Estate which, when taken together with all other interests and property that qualify for the Marital Deduction and that pass or shall have passed to Settlor's wife otherwise than by the terms of this Paragraph, shall be needed to obtain the Optimum Marital Deduction allowable in determining the Federal Estate Tax upon Settlor's Adjusted Gross Estate as defined herein. The Optimum Marital Deduction shall be that amount which when combined with the estate owned by Settlor's spouse, will result in approximate equalization of the estates of the Settlor and Settlor's spouse and occasion the lowest possible Federal Estate Taxes in both of said estates. * * * [946 F.2d at 1219 n.1; emphasis added.] Petitioner argues that respondent's success in limiting the marital deduction in Estate of Klein, as petitioner seeks to do herein, is irreconcilable with respondent's position in the present case. Leaving aside the question of relevancy of petitioner's argument, *233 the fact is that respondent's position is not irreconcilable because, like the provision in Estate of Montgomery v. Commissioner, supra, the provision in Estate of Klein had express reduction language which is lacking herein. We are unpersuaded by petitioner's other convoluted arguments in respect of a situation where a marital trust is underfunded, or of the application of a "fractional interest" approach to the issue herein, or of the fact that some of the cases involved the use of phrases such as "probate estate", "estate", or "residue" instead of "adjusted gross estate". In sum, petitioner seeks not only to have us read "taking into account" as being the equivalent of "less" but also to have us expand language of item V to import the phrase "to my spouse" or its equivalent into the taking into account clause. This we are not prepared to do. We are satisfied that the language of item V of Mr. Pidgeon's will is clear and conclude that we should not go beyond its clear import. [10] Although there is no Tennessee decision in point, we are reinforced in our conclusion by the decisions of the courts of other jurisdictions in cases involving *234 similar language. In re Will of McLaughlin, 307 N.Y.S. 2d 14, 15-16 (Sur. Ct. 1970); New Orleans Baptist Theological Seminary v. Lacy, 219 So.2d 665, 672 (Miss. 1969); In re Estate of Hauger, 398 P.2d 187 (Or. 1965); In re Reben's Will, 115 N.Y.S. 2d 228 (Sur. Ct. 1952). In this connection, we note that, in the absence of controlling State court guidance, we may look for guidance to the holdings of other courts. Bank of New York v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994). [10]
*235 In light of the foregoing, Decision will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have stipulated in respect of a refund to Mr. Pidgeon's estate in the event that we sustain respondent's position herein.↩
3. See also Estate of Higgins v. Commissioner, T.C. Memo. 1991-47; Estate of Klein v. Commissioner, T.C. Memo. 1990-527, affd. 946 F.2d 1218↩ (6th Cir. 1991).
4. Cf. Estate of Montgomery v. Commissioner, T.C. Memo. 1988-457↩.
5. See Tech. Adv. Mem. 8702005 (Sept. 26, 1986)↩, involving a similar provision upon which petitioner also relies.
6. See Darby v. Commissioner, 97 T.C. 51, 67 (1991) (citing Newman v. Commissioner, 68 T.C. 494, 502↩ n.4 (1977)).
7. The definition of adjusted gross estate is still found in sec. 6166(b)(6).↩
8. See also Liberty Natl. Bank & Trust Co. v. United States, 867 F.2d 302 (6th Cir. 1989), and Estate of Christmas v. Commissioner, 91 T.C. 769↩ (1988), where the courts found a formula clause within the meaning of the ERTA transitional rules.
9. In point of fact and keeping in mind that she died only 70 days after Mr. Pidgeon, Mrs. Pidgeon's gross estate, even after subtracting the amount received from Mr. Pidgeon, exceeded that of Mr. Pidgeon by almost $ 800,000, and her taxable estate exceed that of Mr. Pidgeon by almost $ 2.5 million. See supra↩ pp. 3-4. The comparison of estate taxes (Mrs. Pidgeon $ 1,024,285.21, Mr. Pidgeon $ 54,041.63) further points to the lack of motivation with respect to equalization.
10. We note that all of the property otherwise passing to Mrs. Pidgeon qualified for the marital deduction. If property not qualifying for the marital deduction had been involved, presumably petitioner would be arguing that the phrase should be augmented by the addition of language that only property passing to the spouse and↩ qualifying for the marital deduction should be subtracted from one-half of the adjusted gross estate. This would require an even broader judicial rewriting of item V.