T.C. Memo. 1997-348

UNITED STATES TAX COURT

ESTATE OF LEON AMIEL, DECEASED, LEON L. AMIEL,
ADMINISTRATOR, C.T.A., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5602-93.                          Filed July 29, 1997.

John R. Morken and Joshua A. Hazelwood, for petitioner.

Kevin J. Kilduff and Dante D. Lucas, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  Respondent determined a $2,504,100 deficiency in petitioner's Federal estate tax.

All of the 28 adjustments set forth in respondent's notice of deficiency have been resolved save one, that being the amount of the marital deduction to which the Estate of Leon Amiel, Deceased,

(petitioner) is entitled. Petitioner contends that property that funded a residuary trust established under the will of Leon Amiel (the Part B trust) is qualified terminable interest property (QTIP), and as a consequence, petitioner is entitled to an unlimited marital deduction (amounting to $7,305,191) pursuant to section 2056(a) as amended by section 403(a) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 301. Respondent, on the other hand, claims that the transitional rule set forth in ERTA section 403(e)(3), 95 Stat. 305, subjects petitioner to the pre-ERTA marital deduction quantitative limits. Respondent acknowledges that property funding another residuary trust that contains a maximum marital deduction formula clause (the Part A trust) qualifies for the marital deduction. Thus, respondent concludes that petitioner is limited to a marital deduction in the amount of $5,603,819. Continuing for the sake of completeness, respondent argues that the Part B trust property fails to qualify for QTIP treatment because decedent's surviving spouse did not possess a qualifying income interest for life in the trust property. For the reasons that follow, we agree with all of respondent's positions and conclude that the amount of the marital deduction available to petitioner is limited to the amount available prior to the enactment of ERTA.

Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the date of Leon Amiel's death, and all Rule references are to the Tax Court Rules

of Practice and Procedure.  All dollar amounts are rounded.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Leon Amiel (decedent) was a resident of Island Park, New York, at the time of his death on October 1, 1988.  He was survived by his wife, Hilda Amiel (Hilda); two daughters, Katherine and Joanne; an illegitimate son, David; and four grandchildren.

Decedent executed his Last Will and Testament on July 10, 1980.  In addition to specific bequests, decedent's will established two residuary trusts identified as "Part A" and "Part B".  The will provided that the income from each trust was to be paid to or applied for the benefit of Hilda. She had a testamentary general power of appointment over the assets of the Part A trust. Upon Hilda's death, the income from the Part B trust was to be paid to her daughters until their death, and then to the daughters' children until they reached the age of 21, at which time the trust corpus would be distributed to the grandchildren.  On the death of Hilda, the amount of the Part A trust that was not effectively disposed of by Hilda through exercising her power of appointment was to be combined with the then corpus of the Part B trust.

Under decedent's will, the Part A trust was to be funded with an amount equal to that necessary to obtain the maximum marital deduction allowable under Federal law.  In this regard, article

four, paragraph A, of the will provides as follows:

> If my wife, HILDA, survives me, I direct my Executor to set aside that fractional share of my residuary estate (computed before the deduction of or provision for any estate, inheritance or other death taxes or duties, or any interest or penalties thereon) which shall be necessary to obtain the maximum marital deduction allowable in determining the Federal estate tax upon my estate, after taking into account all property passing (or which shall have passed) to my wife other than under this Article (whether under this my Will or otherwise) which qualifies for said deduction. In computing the fraction to be used in determining this share, the final determination in the Federal estate tax proceeding in my estate shall control. Only assets which qualify for said marital deduction shall be allocated to this share. To the extent possible, no assets with respect to which a credit for foreign death taxes is allowable in computing the Federal estate tax on my estate or which are income in respect to a decedent shall be allocated to this share. It is my intention that this share shall participate ratably in any increases or decreases of my residuary estate.

Decedent's will gave the trustees the power to invade the principal of both trusts for the benefit of Hilda, decedent's daughters, and other descendants. In this regard, article four, paragraph C, of the will provides as follows:

> In addition, my Trustees may, at any time or from time to time, pay or apply for the benefit of my wife or for the benefit of any beneficiary of any trust created under this Will so much or all of the principal of such trust as my Trustees in their sole discretion, deem necessary or desirable for the support, maintenance, health, education, comfort or general welfare of my wife or any such beneficiary provided, however, that the principal of the Part A trust shall be paid or applied for the benefit of my wife before the principal of [the] Part B trust is so paid or applied for her benefit.

The will further provides in article five:

> Without in any way limiting by implication or otherwise the powers and discretion of my Executors and

Trustees, it is my desire that to the extent possible, my wife, HILDA, and then my daughters, KATHERINE and JOANNE and then my descendants shall have adequate funds to maintain the standard of comfort and general welfare that they enjoyed at the time of my death.

In this regard, it is my desire that adequate funds be provided to enable my descendants to attend suitable schools, colleges and professional schools, taking into account the cost of tuition, board at school, books and the many other expenses incident to such education.

I also request my Trustees to consider favorably the requirements of my wife, my daughter and my descendants to provide for special family situations which may arise from time to time, including (without limitation) the need for additional funds to furnish a home at the time of marriage, the need for funds to acquire an interest in or establish a business, taking into account the probabilities of the success of the business, experience, and the aggregate amount required to be invested in any such business.

Decedent executed one codicil to his will on August 5, 1988, and another on August 18, 1988. The August 5 codicil created a $500,000 trust for the benefit of decedent's mistress, Sondra Barnett. The August 18 codicil revoked a trust for the benefit of David Amiel and created a $250,000 trust for the benefit of Ms. Barnett. The trustee of the trust created for the benefit of Ms. Barnett was prohibited from invading the corpus of the trust for Ms. Barnett's benefit.

Decedent was in the hospital suffering from terminal cancer in August 1988 when he executed the codicils to his will. The maximum marital deduction formula contained in decedent's will was never amended to refer to an unlimited marital deduction.

In March 1991, Hilda and Ms. Barnett entered into an agreement

pursuant to which:  (1) Ms. Barnett agreed not to seek probate of the August 5 codicil; (2) Ms. Barnett would be paid $175,000; (3) Ms. Barnett surrendered entitlement to any legacy in trust or otherwise contained in the will or codicil; and (4) Ms. Barnett and Hilda agreed to the division of certain personal property owned by decedent which was in the possession of Ms. Barnett at the time of decedent's death.

Decedent's will and the August 18 codicil were admitted to probate by the Surrogate's Court of Nassau County, New York.

The estate tax return was filed on January 2, 1990.  It reported a total gross estate of $8,495,460.  The estate claimed a marital deduction of $7,305,191, which consisted of $3,965,959 in property interests not subject to a QTIP election and $3,339,231 in property interests subject to a QTIP election.[1]  Respondent, after making numerous adjustments that increased decedent's gross estate, disallowed $1,701,372 of the claimed marital deduction.

---

[1]     The $1 mathematical difference is due to rounding.

OPINION

In general, a marital deduction is available in computing the taxable estate of a decedent for the value of all property interests passing from the decedent to the surviving spouse. Sec. 2056(a). Here, petitioner asserts that it is entitled to a $7,305,191 marital deduction, whereas respondent claims petitioner is entitled to a $5,603,819 marital deduction.

At the time decedent executed his will on July 10, 1980, the maximum marital deduction permitted was limited to the greater of $250,000 or 50 percent of the value of a decedent's adjusted gross estate. ERTA eliminated this limitation for persons dying after December 31, 1981. The intent of Congress in repealing the marital deduction quantitative limits was to treat a husband and wife as one economic unit and to allow unlimited tax-free transfers within that unit. S. Rept. 97-144, at 127 (1981), 1981-2 C.B. 412, 461.

Wills drafted before 1982 typically included maximum marital deduction formula clauses (similar to that contained in article four, paragraph A, of decedent's will) under which the amount of property transferred to the surviving spouse was determined by reference to the maximum allowable marital deduction. The purpose of the marital deduction formula clause was to reduce or eliminate Federal estate taxes imposed on the estate of the first spouse to die while passing no more to the surviving spouse than necessary to produce such a reduction or elimination. Because these wills were drafted when there was a quantitative limitation on the maximum

marital deduction, Congress was concerned that many testators who used the formula clause may not have intended to pass more than the greater of $250,000 or 50 percent of the adjusted gross estate to their surviving spouses, which might occur if the new unlimited marital deduction were used in the computation of the marital deduction under a formula clause.  Id. at 128, 1981-2 C.B. at 462.

To prevent a distortion of the testator's intent, Congress provided a transitional rule applicable to wills executed before September 12, 1981, that contain a formula marital deduction clause.  The transitional rule provides that if:

> (A) the decedent dies after December 31, 1981,
>
> (B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed * * * [before September 12, 1981] or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
>
> (C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time * * * [after September 12, 1981] and before the death of the decedent, and
>
> (D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by * * * [ERTA section 403(a)],

> then the amendment made by * * * [ERTA section 403(a)] shall not apply to the estate of such decedent.

ERTA sec. 403(e)(3).

Decedent's will established two residuary trusts. The Part A trust contained a maximum marital deduction formula clause; the Part B trust did not. Respondent acknowledges that the property funding the Part A trust qualifies for the marital deduction. Respondent asserts that the effect of the transitional rule is to limit overall the amount of the marital deduction available to petitioner to that of the pre-ERTA quantitative limits. Hence, respondent posits that the amount of the marital deduction available to petitioner is the amount of the property funding the Part A trust.

Petitioner asserts in its posttrial brief:

> The "Transitional Rule" was not intended to limit the marital deduction for property "passing to the surviving spouse", but rather was intended to prevent the unintended legislative amendment of a testator's testamentary scheme. In the present matter, the formula is used to divide property into a "Part A" trust and a "Part B" trust both of which "pass" to the surviving spouse. The "Part A" trust provides an income interest to the surviving spouse for life and grants her a general power of appointment and qualifies for the marital deduction and this is not contested by respondent.

> The "Part B" trust also qualifies for the marital deduction as it is Qualified Terminable Interest Property ("Q-TIP") and, therefore, pursuant to I.R.C. Sec. 2056(b)(7)(B) "passes" to the surviving spouse. As required, petitioner properly elected on Schedule M, Part 2 of the estate tax return Q-TIP treatment for the "Part B" trust.

We find petitioner's position unpersuasive. The language of

the transitional rule is explicit. The transitional rule precludes the unlimited marital deduction provided with the enactment of ERTA to an estate where: (1) The will containing a maximum marital deduction formula clause was executed prior to the enactment of ERTA; (2) the formula clause was not amended at any time after September 12, 1981, to refer specifically to an unlimited marital deduction; and (3) there is not enacted a State law applicable to the estate which would construe the formula clause as referring to the unlimited marital deduction. Here, each of the aforementioned situations is applicable. The maximum marital deduction formula clause contained in article four, paragraph A, of decedent's will is precisely the type of formula clause addressed by the transitional rule. See Estate of Christmas v. Commissioner, 91 T.C. 769 (1988); Estate of Bauersfeld v. Commissioner, T.C. Memo. 1988-224; cf. Estate of Levitt v. Commissioner, 95 T.C. 289 (1990).

We hold that the amount of the marital deduction available to petitioner is limited to the amount available prior to the enactment of ERTA. Because in the instant case (1) the transitional rule does apply, (2) respondent acknowledges that petitioner is entitled to a marital deduction for the property funding the Part A trust, and (3) the value of the property funding the Part A trust is such as to entitle petitioner to the maximum pre-ERTA marital deduction, we need not decide whether the Part B trust property qualifies for QTIP treatment. Nonetheless, for the sake of completeness we shall address this matter.

Section 2056(b)(7) permits an unlimited marital deduction for QTIP, which is defined as property passing from the decedent to the surviving spouse in which the surviving spouse has a "qualifying income interest for life" and as to which an election has been made. To have a qualifying income interest for life, the surviving spouse must be entitled to all of the income from the QTIP for life, payable annually or at more frequent intervals, and no person, including the surviving spouse, can appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii)(I) and (II). In the instant case, respondent admits that the property in the Part B trust passed from decedent to his surviving spouse and that an election was properly made.

Respondent argues that decedent's surviving spouse, Hilda, did not have a qualifying income interest in the Part B trust property for life because decedent's will permits the trustee of the Part B trust to invade the corpus not only for the benefit of decedent's wife, but also for his daughters and grandchildren. Petitioner contends that the language of the will does not permit invasion of the corpus of the Part B trust during the lifetime of decedent's surviving spouse. We agree with respondent.

Article four, paragraph C, of decedent's will provides that the trustees may invade the trust corpus "at any time * * * for the benefit of my wife or for the benefit of any beneficiary of any trust". Petitioner contends that the trustees' power to invade on behalf of "any beneficiary" should be construed as limited to an

invasion for the current income beneficiary only. That is, according to petitioner, during Hilda's lifetime the trustees could invade the corpus of the Part B trust only for Hilda's benefit. We disagree. In our opinion, the trustees' invasion power is not as limited as petitioner asserts. We believe decedent wanted to permit the trustees to invade the trust corpus "at any time", including the lifetime of Hilda, should it be necessary to benefit Hilda, Katherine, Joanne, or Katherine's and Joanne's children. In this regard, article four, paragraph C, permits such invasion for the support, maintenance, health, education, comfort, or general welfare of "my [decedent's] wife or any such beneficiary".

Article five of decedent's will directs that the trustees provide decedent's descendants with adequate funds to attend suitable schools, colleges, and professional schools. This provision demonstrates that decedent's desire under article four, paragraph C, to permit invasion of corpus for educational purposes was primarily for the benefit of decedent's grandchildren, who could be attending school during the lifetime of Hilda. Article five also provides that the trustees are not to be limited "in any way" in providing decedent's wife, daughters, and grandchildren with adequate funds to maintain the standard of living they enjoyed "at the time of my death".

Article five permits the trustees to invade corpus to provide for "special family situations which may arise from time to time". These are defined to include furnishing a home at the time of

marriage and acquiring or establishing a business. The beneficiaries of any such invasion of corpus are decedent's wife, daughters, and grandchildren. The will does not prohibit an invasion of corpus for the benefit of decedent's daughters and grandchildren during the lifetime of the surviving spouse. Decedent did not intend that only his descendants who married after the death of his wife could receive funds for furnishing a home.

A similar provision was interpreted in Estate of Bowling v. Commissioner, 93 T.C. 286 (1989). The will provided:

> "(g) The Trustee named herein shall be authorized to encroach upon the corpus of said Trust for any emergency needs which effect [sic] the support, maintenance and health needs of any beneficiary of said Trust, with said encroachment to be at the discretion of said Trustee."

Id. at 289. We therein held that the trust property did not qualify for QTIP treatment because the trustee could invade corpus for emergency needs of other beneficiaries during the lifetime of the surviving spouse. Id. at 294.

Petitioner cites several cases where references to "any beneficiary" were held to refer only to current income beneficiaries. We find those cases distinguishable from the instant one. Each case is decided on the specific language involved. Here, as previously stated, we believe decedent's clear intent was to permit the trustees of the Part B trust to provide for emergency and other needs of decedent's daughters and grandchildren during the lifetime of his surviving spouse.

We have considered all the arguments advanced by petitioner.

We find each of them unpersuasive.

To reflect the settlement of the parties and the foregoing,

<u>Decision will be entered under Rule 155</u>.